LEMPKE, by Guardian *ad litem,* and another, Appellants, vs. CUMMINGS and others, Respondents.

*October 14—November 16, 1948.*

For the appellants there was a brief by *Benton, Bosser, Becker, Parnell & Fulton,* attorneys, and *John B. Menn* of counsel, all of Appleton, and oral argument by *David L. Fulton.*

*Harry P. Hoeffel* of Appleton, for the respondents.

MARTIN, J. The dispute in this case is whether the defendants violated their duty to the plaintiff, Lorraine Lempke, (a) in failing to provide her a safe place to alight, and (b) in failing to permit her to reach a place of safety before starting up the vehicle.

Four girls got off the bus at the corner. Three of them walked single file in a westerly direction toward the rear of the bus. They were followed by the plaintiff, Lorraine Lempke, who stepped to the ground. She testified that the bus then immediately started forward and she became apprehensive that she would be struck by the outward swing of the rear end of the bus as it swung out into the highway. To get out of its way she took one step backward and into the depression formed by the ditch at the south end of the culvert. In so doing, she tripped or stumbled over the edge of the culvert which had this steel splinter which caused the injury complained of.

Lorraine Lempke hopped up and went into the middle of the road and the bus at that time was about fifty feet away. She and her sister, Helen Lempke, testified that on this occasion the bus stopped much closer to the edge of the grass than it had theretofore. Previously the bus was stopped nearer to the center of the highway so that the passengers were able to alight safely, clear the bus, and remain on the graveled area.

The testimony most favorable to the plaintiffs is that the distance from the place where the child alighted to the cul-

vert was two small steps, giving only enough space for single file walking along the side of the bus.

It is the duty of the defendant to exercise as high a degree of care as is consistent with the proper operation of the bus, and to anticipate from plaintiff only the exercise of that degree of care for her own safety as would children of like age exercise under the conditions then and there existing.

It is stated in *Lewis v. Pacific Greyhound Lines* (1934), 147 Or. 588, 592, 34 Pac. (2d) 616, 96 A.L.R. 718:

"Under ordinary circumstances, when a passenger is discharged safely upon the street the liability of such carrier for injuries ceases. An automobile bus is able to move or stop in the street at the will of the driver. Ordinarily stations are not maintained by such carriers. The safety of the place afforded the passenger for alighting is entirely within the control of the driver, and passengers are discharged to suit their convenience. The degree of care to be exercised must be commensurate with the danger involved. To discharge a passenger on a highway where he would be subject to the dangers of vehicular traffic would clearly not meet the degree of care which the law exacts. As stated in *Roden v. Connecticut Company,* 113 Conn. 408, 155 Atl. 721: 'The duty of a common carrier of passengers includes an obligation to furnish them a safe place in which to alight, as far as that place is provided by it or is affected or conditioned by the movement of the vehicle, and that duty is only satisfied if it exercises the highest degree of care and skill which reasonably may be expected of intelligent and prudent persons engaged in such a business, in view of the instrumentalities employed and the dangers naturally to be apprehended.'"

In *Houston Transit Co. v. Zimmerman* (Texas, 1947), 200 S.W. (2d) 848, the Texas court stated at p. 851:

"But a passenger is due more than safety from injury or danger at the moment of landing. And of course the failure of a bus driver to perform the duty of discharging a passenger into a safe place may be inferred in the case of a nine-year-old

passenger upon easier terms than in the case of an adult. See *Gazaway v. Nicholson,* 61 Ga. App. 3, 5 S. E. (2d) 391, where the child was seven years old; *Machenheimer v. Falknor,* 144 Wash. 27, 255 Pac. 1031, where the minor was thirteen years old; *Shannon v. Central-Gaither Union School District,* 133 Cal. App. 124, 23 Pac. (2d) 769. . . .

"Bus carriers 'are under the duty to discharge their passengers into a (reasonably) safe place and when so discharged, the relationship is terminated, and if discharged in an unsafe place, the relationship is terminated when the passenger, in the exercise of ordinary care for his own safety, has had a reasonable opportunity to reach a place of safety.' *Texas, New Mexico Coaches v. Williams,* Tex. Civ. App., 191 S. W. (2d) 66, 68. If passengers, who are children, are discharged at a place not reasonably safe, the law will permit the inference to be drawn that they have not been abandoned to their own devices by the carrier, or if they have been so abandoned, that they were in the exercise of due care for their own safety, upon easier terms than in the case of adult passengers of mature judgment."

The testimony that the prong was hidden and hard to find and no one knew of its presence, is not the answer. Other injury might occur from the conditions. It was not necessary that the driver foresee the precise harm to be suffered by the plaintiff; it was merely necessary that he foresee that some harm would likely follow. Such is the well-settled Wisconsin rule. *E. L. Chester Co. v. Wisconsin Power & Light Co.* (1933), 211 Wis. 158, 247 N. W. 861.

It was for the jury to decide whether the bus driver was negligent in stopping the bus so close to the edge of the grass that the plaintiff could not remove herself a safe distance therefrom without stepping into the ditch and then starting the bus immediately so as to force plaintiff into a dangerous area. There is evidence to go to the jury on the question of defendants' negligence on one or both grounds.

*By the Court.*—Judgment reversed, and a new trial ordered.

BROADFOOT, J., took no part.