278 Wis.2d 439 (2004)
2005 WI App 11
691 N.W.2d 904
Clairene D. HUNT, a minor, by her Guardian ad Litem, James J. Gende II and Maxcine Hunt, Plaintiffs-Appellants,
AETNA U.S. HEALTHCARE and GEICO Insurance Co., Involuntary-Plaintiffs,
v.
CLARENDON NATIONAL INSURANCE SERVICE, INC., a foreign insurance corporation, Johnson School Bus Service, Inc., a Wisconsin corporation, and Joseph Brackmann, Defendants-Respondents.[]
No. 03-3522.
Court of Appeals of Wisconsin.
Oral argument November 9, 2004.
Decided December 14, 2004.
On behalf of the plaintiffs-appellants, the cause was submitted on the brief of Edward E. Robinson and Charles David Schmidt of Cannon & Dunphy, S.C. of Brookfield. There was oral argument by Charles David Schmidt.
On behalf of the defendants-respondents, the cause was submitted on the brief of Timothy J. Strattner and Laurie E. Meyer of Borgelt, Powell, Peterson & Frauen, S.C. of Milwaukee. There was oral argument by Timothy J. Strattner.
Before Wedemeyer, P.J., Fine and Kessler, JJ.
*444 ¶ 1. KESSLER, J.
Clairene and Maxcine Hunt (collectively, "the Hunts") appeal from a judgment entered on a jury verdict finding that Joseph Brackmann, Johnson School Bus Service, Inc. (Johnson) and Johnson's insurer, Clarendon National Insurance Service, Inc., (collectively, "defendants"), were not liable for injuries Clairene suffered when she was hit by a car shortly after exiting her school bus.[1] The Hunts argue that they are entitled to a new trial because the trial court: (1) erroneously refused to instruct the jury using the "common carrier" jury instruction that addresses *445 duty of care; (2) erroneously exercised its discretion by barring evidence that Johnson's "drop and go" urban stop discharge procedure was negligently deficient and inherently unsafe; and (3) erroneously exercised its discretion by including the driver of the vehicle, which struck Clairene, on the special verdict. The Hunts also seek a new trial in the interest of justice. Finally, they argue that the trial court erroneously concluded that Clairene is not entitled to uninsured motorist benefits under the insurance policy covering the bus.
¶ 2. We conclude that Johnson is a common carrier and, therefore, the common carrier jury instruction should have been given. We conclude that the Hunts should have been allowed to present evidence to dispute the "drop and go" urban stop discharge procedure employed by the defendants. We further conclude that these were prejudicial errors entitling the Hunts to a new trial.
¶ 3. We do not decide whether the driver of the oncoming vehicle should be included in the special verdict on retrial because there may be evidence adduced, which was not available in this trial, from which a reasonable jury could conclude that she was negligent. However, we note that there was no evidence in this record of the speed, lookout or management and control of the driver of the car that struck Clairene.
¶ 4. Finally, we conclude that in the event the oncoming driver is again found to be negligent, Clairene is entitled to uninsured motorist benefits under the insurance policy covering the school bus because she was still vehicle-oriented in relation to the school bus at the time she was struck.

*446 BACKGROUND
¶ 5. The background facts are undisputed. Clairene, who was ten years old at the time, suffered personal injuries when she was hit by a car while crossing the street after being discharged from her school bus in the City of Milwaukee. The bus dropped her off at the corner of an uncontrolled intersection[2] and proceeded to enter the intersection to turn left. Clairene began to cross the street by walking behind the bus while it was waiting to turn. She was struck within ten feet of the rear of the bus by an oncoming car driven by Shalonda Briggs, who is not a party to this action.
¶ 6. The Hunts sued the driver of the bus, Joseph Brackmann, alleging negligence. They also sued Johnson, alleging that Johnson was vicariously liable for Brackmann's negligence and that Johnson was negligent in its training, instruction and supervision of bus drivers. The Hunts subsequently amended their complaint and added a claim for uninsured motorist coverage under Johnson's insurance policy from Clarendon on grounds that Clairene was "occupying" a "covered auto" at the time of the injury.
¶ 7. The trial court granted defendants' motion for declaratory judgment holding that the insurance policy does not afford uninsured motorist coverage to Clairene for her injuries. The trial court denied defendants' motion for summary judgment on the negligence *447 claims.[3] The negligence claims were tried to a jury, which returned a verdict finding that only Briggs and Clairene were causally negligent with respect to Clairene's injuries. The trial court denied the Hunts' motion for a new trial and entered judgment for defendants.[4] This appeal followed.

DISCUSSION

I. Alleged trial errors

A. Common carrier instruction
¶ 8. The Hunts argue that the trial court erroneously refused to instruct the jury using WIS JICIVIL 1025, "Negligence of a Common Carrier," which would have instructed the jury that in order to discharge the duty owed to passengers, a common carrier "must exercise the highest degree of care for their safety." See id.
[1-4]
¶ 9. A trial court has broad discretion in deciding whether to give a particular jury instruction and the court must exercise its discretion "to fully and fairly inform the jury of the rules of law applicable to the case and to assist the jury in making a reasonable analysis of the evidence." State v. Coleman, 206 Wis. 2d 199, 212, 556 N.W.2d 701 (1996) (citation omitted). However, we *448 will independently review whether a jury instruction is appropriate under the specific facts of a given case. State v. Groth, 2002 WI App 299, ¶ 8, 258 Wis. 2d 889, 655 N.W.2d 163. If a jury instruction "is erroneous and probably misleads the jury, we will reverse because the misstatement constitutes prejudicial error." Young v. Professionals Ins. Co., 154 Wis. 2d 742, 746, 454 N.W.2d 24 (Ct. App. 1990). "A new trial is warranted when an erroneous instruction is prejudicial." Id.
¶ 10. Prior to trial, the trial court specifically considered whether Johnson was a "common carrier" in response to defendants' motion in limine that sought to preclude the Hunts from presenting any evidence or arguments that Johnson and Brackmann owed Clairene the "highest degree of care" required of a common carrier. The trial court granted defendants' motion and later denied the Hunts' request at the close of trial to instruct the jurors using WIS JICIVIL 1025, the instruction defining a common carrier's duty of care. The trial court's ruling was based on its conclusion of law that Johnson was not a common carrier.
[5-7]
¶ 11. We first consider whether Johnson is a common carrier. "A carrier is an enterprise in the business of publicly transporting persons or goods." Brockway v. Travelers Ins. Co., 107 Wis. 2d 636, 638, 321 N.W.2d 332 (Ct. App. 1982). "Two elements characterize a carrier as a common carrier: (1) The service is for hire, and (2) the carrier holds itself out to the public." Id. (footnote omitted). In Brockway, the court also recognized two additional factors that the Wisconsin Supreme Court considered in Anderson v. Yellow Cab Co., 179 Wis. 300, 191 N.W. 748 (1923): whether the operator controlled the manner of transportation and whether the passenger places himself in the operator's care. Brockway, 107 *449 Wis. 2d at 638 n.2 (citing Anderson, 179 Wis. at 304-06). Here, Johnson School Bus Service makes itself available to public school districts, offers to transport persons identified by the district to various locations at various times (also identified by the district), and receives payment from the district for those services. Clearly, the service is for hire. The part of the public attending the particular public school is served. The passengers are in the care of the operator while traveling from place to place. Johnson School Bus Service satisfies all common law characteristics of a common carrier.
¶ 12. The parties devote much of their arguments to discussing whether school buses operated by for-profit entities are "common motor carriers" as that term is defined in Wis. Stat. § 194.01(1) (2001-02).[5] We do *450 not believe the statutory definition is necessary to the outcome of this case, although it may be read to support our conclusion that Johnson is a common carrier. Chapter 194, titled "Motor Vehicle Transportation," deals generally with licensure, the physical condition of motor vehicles to be operated on Wisconsin highways and with the regulatory powers of the Wisconsin Department of Transportation. It makes no mention of tort liability or standards of care required of drivers.
[8]
¶ 13. The common law classification, rather than the definition in a regulatory scheme, controls the applicable standard of care in a negligence case. For instance, although taxicabs are specifically excluded from the definition of "common motor carrier" found in Wis. Stat. § 194.01(1), in a negligence context "[t]he common-law duty as to common carriers applies equally to taxicabs." Comment, WIS JICIVIL 1025. The comment further explains, "Wis. Stat. § 194.01(5) is a *451 regulatory statute and, hence . . . is inapplicable to a taxicab company's negligence." Id.
¶ 14. We conclude that Johnson is a common carrier and that the jury should have been instructed accordingly. We are guided by Lempke v. Cummings, 253 Wis. 570, 34 N.W.2d 673 (1948), which discussed a private school bus company that provided transportation of school children in the context of its role as a common carrier. Id. at 571-74. In that context, the court held that "[t]he duty of a common carrier of passengers includes an obligation to furnish them a safe place in which to alight . . . and that duty is only satisfied if it exercises the highest degree of care and skill which reasonably may be expected of intelligent and prudent persons engaged in such a business . . . ." Id. at 573 (internal quotations and citation omitted). This expression of the degree of care that must be exercised is consistent with that identified in WIS JICIVIL 1025 and with numerous cases decided since Lempke.[6]
¶ 15. Because Johnson is a common carrier as that term is used in negligence law, the trial court should have instructed the jury consistent with WIS JICIVIL 1025, which provides:
In this case, (defendant) is a common carrier. A common carrier is not required to guarantee the safety of its passengers. However, in order to discharge the duty that it owes to its passengers, a common carrier must exercise the highest degree of care for their safety. The care required is the highest that can be reasonably exercised by persons of vigilance and foresight when acting under the same or similar circumstances, taking *452 into consideration the type of transportation used and the practical operation of its business as a common carrier.
Instead, the trial court gave the jury WIS JICIVIL 1005, the general negligence instruction. It provides:
A person is negligent when (he) (she) fails to exercise ordinary care. Ordinary care is the care which a reasonable person would use in similar circumstances. A person is not using ordinary care and is negligent, if the person, without intending to do harm, does something (or fails to do something) that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property.
[9]
¶ 16. We conclude that the absence of the common carrier instruction, and the use of the general negligence instruction to analyze the actions of Johnson and Brackmann, misstated the applicable law and hence were erroneous. Because these errors probably misled the jury, we conclude that these errors were prejudicial and, therefore, reverse and remand for a new trial. See Young, 154 Wis. 2d at 746.
[10, 11]
¶ 17. The jury was probably misled because it was instructed that Johnson and Brackmann were required to exercise precisely the same standard of care as Clairene and Briggs. That is not correct. As common carriers, "ordinary care" for Johnson and Brackmann is "a very high degree" of care. See Ruka v. Zierer, 195 Wis. 285, 292, 218 N.W. 358 (1928).[7] In Ruka, the court *453 explained, "Common carriers must exercise ordinary care for the safety of their passengers. But to constitute ordinary care, the care exercised must be of a very high degree." Id. The difference in degrees of ordinary care for ordinary persons and for common carriers is significant. It recognizes the greater responsibility assumed, and hence the greater obligation owed, by those who transport the public to those who trust them to do so safely and with a high degree of ordinary care. Therefore, we conclude that not giving the common carrier instruction misled the jury because it misstated the applicable law. This error requires reversal.

B. Evidence concerning Johnson's "drop-and-go" procedure
¶ 18. The Hunts argue that the trial court erroneously excluded evidence of the discharge procedures Johnson used in rural areas, which the Hunts hoped to use to show that Johnson's "drop-and-go" urban discharge procedures were deficient and inherently unsafe. They further argue that the trial court compounded the error by erroneously allowing defendants to introduce evidence suggesting that Wisconsin law actually requires the "drop-and-go"[8] practice in urban areas when no such requirement exists.
[12, 13]
¶ 19. The admissibility of evidence is a matter within the trial court's discretion. State v. Pharr, 115 *454 Wis. 2d 334, 342, 340 N.W.2d 498 (1983). Consequently, a trial court's evidentiary ruling will not be upset on appeal if the court had "a reasonable basis" and it was made "in accordance with accepted legal standards and in accordance with the facts of record." Id. (citations omitted).
¶ 20. We note our concern with the exclusion of evidence concerning defendants' discharge procedures used in rural areas, and the types of areas classified as rural in Johnson's written policy on stop procedures. Because the record here is incomplete in that the hearing on defendants' motion in limine is not part of the record, we are unable to tell whether the limitation applied only to Johnson's rural discharge policies or whether it applied to any other discharge policies or practices. The Hunts sought to introduce evidence concerning safety procedures employed in rural areas in order to show that Johnson's Milwaukee stop procedures were inherently dangerous. The Hunts intended to show that Johnson employed reasonable and safer discharge alternatives in other parts of the metropolitan area classified by Johnson as "rural." Johnson, they assert, could have employed safer discharge methods here. For instance, the Hunts suggest drivers could remain at the point of discharge and assist the children crossing in front of the bus by signaling to them when it is safe to cross, or by having drivers honk the horn to warn discharged children of approaching traffic.
[14]
¶ 21. Defendants argue that evidence of rural stop procedures is irrelevant because under state law, school buses in urban areas are not allowed to use flashing red lights or extend attached "stop" signs. However, just because red flashing lights and sign extensions are not allowed within the City of Milwaukee, *455 it does not follow that school bus drivers within the city cannot assist students in crossing the street in urban areas. By way of example, one easy way to assist would be to require the children to cross in front of the bus. We conclude that the Hunts were entitled to introduce evidence of other safety procedures that could have been employed because the failure to do so probably mislead the jury to the prejudice of the Hunts.
[15]
¶ 22. At oral argument, defendants candidly admitted that no law requires only the "drop-and-go" policy they employ. However, they emphasized their compliance with certain requirements of WIS. STAT. ch. 194 and their adoption of certain school bus safety recommendations published by the Wisconsin Department of Public Instruction. Apparently, defendants viewed following these provisions as creating a sort of safe harbor, which would insulate them from liability in civil litigation if they followed these provisions. We disagree. Defendants are common carriers, obligated as a matter of ordinary care to exercise "a very high degree" of care for the safety of their passengers.[9]See Ruka, 195 Wis. at 292.

II. Uninsured motorist coverage
¶ 23. The Hunts challenge the trial court's declaratory judgment that Clairene should not be allowed to collect under the uninsured motorist ("UM") insurance policy that Clarendon issued to Johnson. Although we do not yet know if Briggs will be found partially liable for Clairene's injuries, we are able to review the trial court's declaratory judgment with respect to the potential applicability of the policy.
*456 [16]
¶ 24. The interpretation of an insurance contract is a question of law that this court reviews de novo. Lambert v. Wrensch, 135 Wis. 2d 105, 115, 399 N.W.2d 369 (1987). The parties agree that the specific issue is whether Clairene was "occupying" the bus at the time she was injured. The parties also agreed at oral argument that Clairene was within a ten-foot perimeter of the bus at the time she was struck, and that the ten-foot zone is acknowledged in the industry as a recognized zone of danger to passengers. The Clarendon policy defines "occupying" as "getting in, on, out or off."
[17-19]
¶ 25. Wisconsin courts do not require "that an individual have physical contact with an automobile before that person can be labeled an occupant under an automobile insurance policy." Kreuser v. Heritage Mut. Ins. Co., 158 Wis. 2d 166, 172, 461 N.W.2d 806 (Ct. App. 1990). Rather, as the court recognized in Kreuser, the test for determining whether a person is "occupying" a vehicle so as to be entitled to uninsured motorist coverage is whether the party was vehicle-oriented or highway-oriented at the time of the injury. Id. at 173. The "vehicle-oriented" test "considers the nature of the act engaged in at the time of the injury and the intent of the person injured." Id. Kreuser added one additional inquiry: whether the party was "within the reasonable geographical perimeter of the vehicle." Id.
¶ 26. Applying the vehicle-oriented test prior to Kreuser, this court in Sentry Ins. Co. v. Providence Wash. Ins. Co., 91 Wis. 2d 457, 458-459, 283 N.W.2d 455 (Ct. App. 1979), considered whether a man was "occupying" a vehicle when he exited the vehicle and crossed in front of the vehicle to reach the sidewalk. As the man was walking, a second vehicle hit the vehicle that the *457 man had just exited, causing the first vehicle to hit the man and pin him to a third car. Id. We held that the man was occupying the vehicle, because he
had not ceased occupancy of the car, nor had he severed his connection with the car, at the time of the accident. He was "vehicle oriented" at all times, from the moment he exited the automobile until the time he was injured by the uninsured motorist. He had not completed his act of alighting from the car.
Id. at 460-61.
¶ 27. Similarly, in Kreuser, we concluded that a woman named Nancy Kreuser was "occupying" a vehicle at the time she was injured, even when she had not yet entered the vehicle. 158 Wis. 2d at 173. Kreuser was waiting on the side of the road for her co-worker to pick her up in his vehicle. Id. at 169. As the vehicle approached, a motorcycle struck the vehicle from behind and then struck Kreuser, injuring her. Id. We applied the three-part test discussed above and concluded that she was "occupying" her co-worker's vehicle. Id. at 173-74. We reasoned:
Kreuser was within ten feet of [the] vehicle and she was beginning to turn to prepare to enter the vehicle when she was struck by the motorcycle. There is no doubt that both her intent and [her co-worker's] intent was to have Kreuser occupy the automobile. Kreuser had ridden with [the co-worker] in the past and [the co-worker] regularly picked her up at this . . . intersection.
We are satisfied that an ordinary lay person would expect that people preparing to board an automobile come within the definition of occupying and would be afforded coverage if injured during the boarding process. If we were to say that the boarding person had to *458 have actual physical contact with the insured vehicle we would unduly restrict coverage.
Id.
[20]
¶ 28. Applying the Kreuser test here, we conclude that Clairene was "occupying" the bus at the time of her injury. In all of the cases discussed above, the vehicle in question played some significant role in the ultimate injury. The accident occurred just after Clairene exited the bus and started to walk behind it (as she had been instructed to do) to cross the street. It is undisputed that although the bus was pulling into the intersection and waiting to turn left, Clairene was still within the ten-foot danger zone at the time she was struck. Because Clairene was behind the bus, the bus blocked Clairene from the view of on-coming traffic until she was in the on-coming traffic lane. Just as the injured man in Sentry was still "occupying" his vehicle when he crossed in front of it to get to the sidewalk, Clairene was still "occupying" the bus when she walked behind the bus within the zone of danger to cross the street. See id., 91 Wis. 2d at 460-61.
¶ 29. Defendants argue that unlike the injured persons in Sentry and Kreuser, Clairene was not "occupying" the bus at the time of injury. They contend that unlike the man in Sentry, Clairene had finished "occupying" the bus because she stepped onto the sidewalk, next to the bus, before she stepped off the sidewalk in order to cross the street. In addition, the man in Sentry was within arm's reach of the vehicle, while Clairene was not. Finally, the vehicle in Sentry had not moved after the man exited, but here the bus had moved into the intersection. Similarly, defendants argue that Clairene was not "vehicle-oriented" like Kreuser, because she did not intend to re-board the bus.
*459 [21-23]
¶ 30. We are not persuaded by defendants' arguments. Although the facts of Clairene's case vary somewhat from those in Sentry and Kreuser, defendants' attempt to distinguish the cases is not consistent with the policy and rationale underlying those cases. "Our objective in interpreting and construing the insurance policy is to carry out the true intentions of the parties." Kreuser, 158 Wis. 2d at 171-72. "The test used in construing an insurance policy is what a reasonable person in the position of the insured would have understood the words to mean." Id. at 172. "The interpretation of the policy should further the insured's expectations of coverage." Id. We conclude that an insured, purchasing coverage for a school bus, would expect that a child exiting a school bus and immediately walking behind the bus to cross the street would come within the definition of occupying and would be afforded coverage if injured during that process. Therefore, we reverse the declaratory judgment and hold that Clairene is entitled to coverage under the uninsured motorist provisions of Clarendon's policy.

III. Inclusion of Briggs on the jury verdict form
¶ 31. At the conclusion of the trial, the Hunts moved for a directed verdict, asking that Briggs, the driver of the oncoming car, not be included on the special verdict because there was no evidence that she was negligent. In Gierach v. Snap-On Tools Corp., 79 Wis. 2d 47, 55, 255 N.W.2d 465 (1977), the Wisconsin Supreme Court discussed the propriety of including non-parties on special verdict forms. The court stated:
Although . . . a special verdict question in respect to the negligence of an individual who is not a party may be included in the verdict, it is necessary that there be *460 "evidence of conduct which, if believed by the jury, would constitute negligence on the part of the person or other legal entity inquired about."
Id. at 55-56 (citation omitted). While we have been unable to find evidence of Briggs'conduct in the current record, we are confident that the trial court will apply the facts that are developed on retrial to the law the supreme court has established with respect to the negligence of a non-party.
By the Court.Judgment reversed and cause remanded for further proceedings.
*461 
NOTES
[] Petition to review dismissed.
[1] Aetna U.S. Healthcare and GEICO Insurance Company are involuntary plaintiffs and did not participate in this appeal.
[2] There were no traffic lights or stop signs on any portion of the intersection. There was a "yield" sign on the north-south street. Clairene had to cross the east-west street in an unmarked and uncontrolled crosswalk.
[3] Defendants filed with this court a petition for leave to appeal the non-final order denying their motion for summary judgment. We denied that petition in Hunt v. Clarendon Natl Ins., No. 01-3496-LV, order (WI App Feb. 13, 2002).
[4] The Honorable David Hansher decided the motion for summary judgment. The Honorable Jeffrey Kremers decided the motion for declaratory judgment and presided over the trial and post-trial proceedings.
[5] WISCONSIN STAT. § 194.01(1) provides:

"Common motor carrier" means any person who holds himself or herself out to the public as willing to undertake for hire to transport passengers by motor vehicle between fixed end points or over a regular route upon the public highways or property over regular or irregular routes upon the public highways. The transportation of passengers in taxicab service or in commuter car pool or van pool vehicles with a passenger-carrying capacity of less than 16 persons or in a school bus under s. 120.13 (27) shall not be construed as being that of a common motor carrier.
School buses falling within the definition of Wis. Stat. § 120.13(27) are excluded from the definition of common motor carrier. See § 194.01(1). Section 120.13 provides in relevant part:
120.13 School board powers.
. . . .
(27) TRANSPORTATION OF PERSONS WHO ARE NOT PUPILS. (a) Subject to par. (b), the school board may use or allow the use of school buses owned and operated by the school district to transport persons who are not pupils of the school district. School buses may be used by persons who are not pupils of the school district during school hours if such use does not interfere with the transportation of pupils of the school district. The school board shall charge a fee for use of the school buses under this subsection. The fee shall be an amount equal to the actual cost of transportation under this subsection, including but not limited to costs for depreciation, maintenance, insurance, fuel and compensation of vehicle operators. If the school board denies a written request for use of the school buses, the school board shall provide the requester a written statement of the basis for the denial within 14 days after the denial.
(b) No school bus may be used to provide transportation under this subsection unless the vehicle is insured by a policy providing property damage coverage and bodily injury liability coverage for such transportation in the amounts specified in s. 121.53(1).
[6] See Comment, WIS JICIVIL 1025.
[7] Although it may seem incongruous to require that common carriers exercise a "very high degree" of "ordinary care," this is the terminology employed in Ruka v. Zierer, 195 Wis. 285, 292, 218 N.W. 358 (1928). Put more simply, the ordinary care that is required of common carriers requires a more heightened degree of care than the ordinary care that is required of others.
[8] The phrase "drop-and-go" appears to refer to the procedure of dropping the student at the curb and then continuing on, without waiting for the student to cross the street.
[9] See Footnote 7.