MOHEREK, by Guardian *ad litem*, and another, Plaintiff and Appellants, v. TUCKER and others, Defendants: AMERICAN STANDARD INSURANCE COMPANY, Defendant and Respondent.

*No. 317. Submitted under sec. (Rule) 251.54 February 5, 1975.—Decided June 16, 1975.*
(Also reported in 230 N. W. 2d 148.)

For the appellants the cause was submitted on the brief of *Kolbe, Sharp & Arena,* attorneys, and *Schoone, McManus, Hanson & Grady, S. C.* of counsel, all of Racine; and for the defendant-respondent the cause was submitted on the brief of *Thompson, Evans, Hostak & Clack* of Racine.

DAY, J. This appeal presents the question, is a passenger of an automobile who is standing behind such auto, holding its spare tire up against its rear bumper to protect the rear bumper of such car from the front bumper of a second car that is about to push it, "occupying" the first auto so as to be covered by its uninsured motorist insurance? The policy in question defined "occupying" as "in or upon, entering into or alighting from" the insured vehicle. We conclude under the facts in this case that the plaintiff-appellant Rudolph P. Moherek was "upon" the vehicle at the time the injury occurred.

On the evening of December 14, 1968, Rudolph P. Moherek was a passenger in a car driven by defendant Thomas R. Tucker and insured by the defendant-respondent American Standard Insurance Company of Wisconsin.[1]

Mr. Tucker had picked up Mr. Moherek, a minor, earlier that evening and at about midnight they picked up two girls to give them a ride home. As they left the city of Racine, the car engine started "coughing" and

[1] The caption on the briefs and the pleadings below name the defendant-appellant as American Family Mutual Insurance Company. The trial court ordered that all pleadings be amended to reflect the fact that the correct name of the company is American Standard Insurance Company of Wisconsin and we have so changed the caption of this case.

made noises indicating engine trouble. As they drove west on Highway 38 in Racine county, the car stalled and Mr. Tucker pulled over to the right edge of the pavement. They started to push the car to try to start it. It did not start and they concluded they were out of gas. Mr. Moherek flagged down a car to go get gas. He obtained the gasoline and was given a ride back to the scene by the same automobile he had flagged down; that car then left. Mr. Moherek had been gone thirty to forty minutes. They put the gas in the car but the car would not start. It was then decided to flag down another car for help. It was by coincidence that the car which stopped to give them aid was driven by the father of one of the girls who was a passenger in the Tucker car, Mr. Warren H. Bradley. It was decided that Mr. Bradley would push the Tucker automobile with his automobile. To avoid scratching the two cars, Mr. Tucker opened the trunk of his car and took out the spare tire for Mr. Moherek to hold between the cars' bumpers. Mr. Moherek held the spare tire out between the bumpers as Mr. Bradley started to push the Tucker automobile. At that time Mr. Moherek testified he heard a squeal of tires, turned and started to take a stride away from the automobiles as a third car crashed into the rear end of the Bradley car, sending the Bradley car forward and pinning Mr. Moherek between the Bradley and Tucker cars. The third vehicle was driven by Edwin E. Meinert who was uninsured.

It was approximately forty-five minutes from the time that Mr. Moherek first left the Tucker vehicle until he was injured. Had the car been started, it was Mr. Moherek's intention to resume his position as passenger in the vehicle and to continue on with their original planned journey.

Mr. Moherek was paid $12,906 by American Mutual Insurance Company of Boston, his father's insurance

carrier, under an uninsured motorist's coverage on his father's automobile. American Mutual assigned its rights in this action to Mr. Moherek, who then sued American Standard, which was Tucker's insurance carrier, under the uninsured motorist coverage clause of the policy on Tucker's car.

Pursuant to stipulation entered into between the parties, upon payment of $200 by Meinert and $100 by Warren H. Bradley and his insurance carrier, Allstate Insurance Company (Allstate), Mr. Meinert and Mr. Bradley and Allstate were dismissed from the action with prejudice. The stipulation further provided that the issues to be decided by the court were: (a) Whether at the time of the accident in question the plaintiff Rudolph P. Moherek was covered by the uninsured motorist provision of the policy issued by the defendant American Standard, and (b) if coverage is established, what obligations and duties, if any, the defendant (American Standard) has to plaintiff, taking into consideration the fact that the plaintiff was paid $12,906 under the uninsured motorist provision of the policy issued by the American Mutual Insurance Company of Boston and taking into consideration the fact that American Mutual has assigned all of its rights and interest to the plaintiff.

The trial court answered question (a) adversely to the plaintiff; question (b) was never decided. Under our ruling, question (b) is returned to the trial court for decision.

The question under the facts in this case is, did Mr. Moherek qualify as one "occupying" the Tucker vehicle at the time of the accident? That question resolves itself into whether he was "in or upon, entering into or alighting from" the Tucker car. Clearly he was not entering into or alighting from the automobile nor was he in the car at the time of the accident.

The trial court wrote a decision on November 9, 1972, with findings and conclusions on April 30, 1973, finding

that Mr. Moherek had not qualified as an occupant of the Tucker car, and judgment to that effect was entered on July 6, 1973, and Moherek and his father Rudolph J. Moherek appeal therefrom.

It was stipulated by all parties that all defendants except American Standard would be dismissed from the action and the trial court so ordered.

This court has often said that words used in insurance policies are to be given the common and ordinary meaning, which they have in the minds of the average layman. *Schmidt v. Luchterhand* (1974), 62 Wis. 2d 125, 133, 214 N. W. 2d 393.

As this court said in *Amidzich v. Charter Oak Fire Ins. Co.* (1969), 44 Wis. 2d 45, 51, 170 N. W. 2d 813:

"When a plain meaning of a word of a statute or contract is apparent, we need not resort to either construction or case law to bolster our recognition of that plain meaning."

We conclude that the word "upon" in relation to "occupying," the vehicle is not susceptible to a simple dictionary definition of meaning "on." It would seem the word refers to something besides sitting on the roof or hood, both of which would be "on" the vehicle. What about sitting on a bumper or a fender, with feet on the ground; or leaning back against the vehicle while standing or resting one foot on the bumper or a hand on the side of the vehicle? Is one thereby covered who is a complete stranger to the vehicle or its operation, as for instance a merely curious passerby who would come upon the scene and lean against the car while watching the others try to start it?

We are persuaded by the reasoning of those courts which in construing the word "upon" in similar clauses in uninsured motorist and medical-payment provisions find that "upon," in relation to "in" and "entering into or alighting from," is ambiguous.

As the Illinois court said in *Wolf v. American Casualty Co.* (1954), 2 Ill. App. 2d 124, 130, 118 N. E. 2d 777:

". . . As related to the instant case, it is the use of the word 'upon' which creates an ambiguity. It cannot mean that the insured, to be within the meaning of the clause, had to be couched on the roof of the car or on the running board or sitting on the hood. It must connote some physical relationship between himself and the car that enlarged the area defined by the words 'entering or alighting' and the word 'in.'"

In that case the plaintiff Wolf had skidded his car into another and the two drivers got out of their cars and walked to the curb to exchange identification. They started to walk back to the cars to verify the license numbers when the plaintiff was two or three feet in front of his car reaching for a pencil to write down the license number, he was struck by a third car. It was held that he was covered under the policy's medical-payments provision. In so holding the court made reference to the case of *Madden v. Automobile Ins. Co.* (1948), 82 Ohio App. 111, 79 N. E. 2d 586. In that case the plaintiff Madden stopped to change a tire on his car. After doing so, he placed the damaged tire in the car trunk and was standing on the street behind the car, leaning forward with the upper part of his body and his arms in the trunk when he was struck by another vehicle. The Ohio court said the inference was "pretty" strong that he was touching the car, but the court then went on to say that the words "entering" and "alighting" enlarged the words "in" and "upon" and indicate no intent to restrict liability to only those cases where physical contact exists. What must be considered, the court held, is the nature of the act engaged in at the time and also the purpose and intent of the person injured. Mr. Madden was found to have been "occupying" the vehicle and therefore entitled to payment under his policy for medical expenses.

In *Matter of Allstate Ins. v. Flaumenbaum* (1970), 62 Misc. 2d 32, 46, 308 N. Y. Supp. 2d 447, the plaintiff and his wife were passengers in a taxi which pulled up in front of their house. The plaintiff stepped out of the cab and left the door open in order to pay the fare and to allow his wife to exit. He was paying the driver when a car struck the open cab door, which then struck the plaintiff, throwing him to the ground. The court extended the coverage to the plaintiff, saying that one need not have physical contact with the vehicle in order to "occupy" it. The court then said:

". . . a person has not ceased 'occupying' a vehicle until he has severed his connection with it—*i.e.*, when he is on his own without any reference to it. If he is still vehicle-oriented, as opposed to highway-oriented, he continues to 'occupy' the vehicle."

In *State-Wide Ins. Co. v. Murdock* (1969), 25 N. Y. 2d 674, 306 N. Y. Supp. 2d 678, 254 N. E. 2d 908, the plaintiff was a passenger in a panel truck which became stalled. The driver got out and raised the hood to look at the motor. The plaintiff, in order to aid the driver, got out and was proceeding to the front of the truck and was struck and injured by an uninsured vehicle. The plaintiff was not in actual physical contact with the vehicle at the time of his injury but was held to have been "upon" the vehicle and covered by the uninsured-motorist provisions of the policy. *See also: Rice v. All-state Ins. Co.* (1972), 38 App. Div. 2d 491, 330 N. Y. Supp. 2d 660.

In *Cocking v. State Farm Mut. Automobile Ins. Co.* (1970), 6 Cal. App. 3d 965, 86 Cal. Rptr. 193, the plaintiff pulled over to the side of the road to put tire chains on when it began to snow. He took the chains out of the trunk and was standing from one to four feet from the car. In unfastening the bag in which the chains were, he was struck by an uninsured motorist. He had previously

been inside the vehicle. At the time of the accident he was not re-entering and was not in any physical contact with any part of the car nor were the bag or the chains in contact with the car. The California court held, however, that he was "upon" the car at the time of his injury and in so determining said that consideration must be given not only to what he was doing when injured but also to his purpose and intent.

In the case at bar the facts are clear that Mr. Moherek had not severed his relationship with the vehicle by any means. Everything that he did after getting out of the vehicle and especially at the time that his injury occurred had to do with trying to start the vehicle again so that he and his companions could continue on their journey. However, in this case he had very close physical contact with the car which belonged to Tucker because he was holding a tire that in turn was pressed up against the bumper of the Tucker automobile. He certainly had not severed his connection with this vehicle and, to use the words from *Flaumenbaum*, he was still vehicle oriented and therefore occupying the vehicle in the sense of being upon it as construed in the cases cited.

Having found the word "upon" ambiguous, we must apply the rule of strict construction of insurance policies resolving ambiguities against the insurer. *Leatherman v. American Family Mut. Ins. Co.* (1971), 52 Wis. 2d 644, 649, 190 N. W. 2d 904.

The defendant-respondent American Standard in its brief states: ". . . Whether one is 'upon' an insured vehicle for purposes of uninsured-motorist coverage should be whether that individual is in contact with that vehicle at the time of the accident."

The defendant-respondent has cited cases from other jurisdictions to support its contention that a physical contact with a vehicle is necessary before coverage will be had under the uninsured-motorist clause. We disagree with the reasoning of those cases.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings not inconsistent with this opinion.

WILKIE, C. J. *(dissenting)*. I would affirm. The word "upon" in the subject insurance policy is not ambiguous. The word is to be taken in its ordinary and commonly accepted meaning.[1] No "reasonable person in the position of the insured"[2] would understand the language used in the policy to mean any different than the first dictionary definition of "upon" as "on."[3] Since the word "upon" is not ambiguous, I would not apply the well-accepted rule that where there is an ambiguity the policy language should be construed against the insurance company drafting the policy.

I have been authorized to state that Mr. Justice CONNOR T. HANSEN joins in this dissent.

[1] *Mittelsteadt v. Bovee* (1960), 9 Wis. 2d 44, 49, 100 N. W. 2d 376.

[2] *McPhee v. American Motorists Ins. Co.* (1973), 57 Wis. 2d 669, 677, 205 N. W. 2d 152.

[3] *Webster's, New International Dictionary* (3d ed., unabridged), p. 2517.