Nancy KREUSER, by her Guardian Richard Kreuser,
Plaintiffs-Respondents,

v.

HERITAGE MUTUAL INSURANCE COMPANY,
Defendant-Appellant.†

Court of Appeals

*No. 90–0249. Submitted on briefs August 21, 1990.—Decided
September 12, 1990.*

(Also reported in·461 N.W.2d 806.)

† Petition to review denied.

167

On behalf of the defendant-appellant, the cause was submitted on the briefs of *James E. Snodgrass, Snodgrass & Simpson* of Milwaukee.

On behalf of plaintiffs-respondents, the cause was submitted on the brief of *Gregory J. Cook* and *Vicki L. Arrowood, Kasdorf, Lewis & Swietlik, S.C.* of Milwaukee.

Before Brown, Scott and Anderson, JJ.

ANDERSON, J.   The issue presented on appeal is whether or not an individual waiting to enter an automobile, which is pulling up to a curb, is occupying the automobile as that term is defined in the uninsured motorist and medical payments provisions of an automobile insurance policy.

On July 22, 1987, Nancy Kreuser had just left work at Great Lakes International and was standing on the southwest corner of 23rd Street and Racine Street in the

Town of Mt. Pleasant, Racine county, waiting to be picked up by John Hoffman, a co-worker.

Hoffman had driven Kreuser to work that morning and they had made arrangements for him to drive her home after their shift ended.

Hoffman, who was insured by Heritage Mutual Insurance Company, was southbound in the traffic lane on 23rd Street. At this point on 23rd Street, there is a traffic lane and a parking lane for vehicles traveling in each direction on 23rd Street. Approximately two to three car lengths from the southwest corner, he put on his right turn signal and began to brake, as his intention was to pull over to the curb at the southwest corner to allow Kreuser to enter his automobile.

Hoffman crossed the intersection of 23rd Street and Racine Street and was two-thirds into the parking lane when the right rear of his vehicle was struck by a motorcycle driven at an excessive rate of speed by Michael Oliver.

In a written statement, Hoffman said that just before he was struck, he was maneuvering to pick up Kreuser and he saw that she was no more than ten feet from his automobile and that she started to turn so that she would be in a position to enter his automobile.

Oliver, who was uninsured, careened off the right rear of Hoffman's automobile and slammed into Kreuser, knocking her down, six feet from the curb. Oliver and the motorcycle came to rest approximately thirty-nine feet from the curb.

Heritage has made a payment of $25,000 to Kreuser under the liability coverage of the automobile insurance policy. Hoffman's insurance coverage included uninsured motorist with limits of $25,000 and medical payments of $3000.

Pertinent portions of the insurance policy Heritage issued to Hoffman provide:

## DEFINITIONS USED THROUGHOUT THIS POLICY

Throughout this policy and its endorsements, the words defined below appear in bold face or in all capital letters.

. . ..

9. "**Occupying**" means in, on, getting into or out of.

### Part II—EXPENSES FOR MEDICAL SERVICES

Coverage B—**Medical Payments Coverage**

We will pay reasonable expenses incurred within three years from the date of accident for necessary medical and funeral services because of **bodily injury** sustained by an **insured person.**

ADDITIONAL DEFINITION USED IN THIS PART ONLY:

As used in this Part, "**insured person**" means:

. . ..

4. Any other person **occupying** your insured car . . ..

### Part III—UNINSURED MOTORIST

Coverage C—Uninsured Motorists Coverage

**We** will pay damages for bodily injury which an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle.**

. . ..

ADDITIONAL DEFINITIONS USED IN THIS PART ONLY

As used in this Part:
    1.   "**Insured person**" means:

. . ..

    b.  Any other person while **occupying your insured car.**

The circuit court, in granting Kreuser's summary judgment motion, held that by preparing to enter the Hoffman automobile she was "vehicle oriented" at the time she was struck, and she fell under the policy's definition of occupying the vehicle. On appeal, Heritage contends that the policy language of "getting into" is not ambiguous and cannot be read to include Kreuser's actions within the definition of occupying.

In reviewing a grant of summary judgment we apply the same approach as the circuit court. *Town of Janesville v. Rock County,* 153 Wis. 2d 538, 541, 451 N.W.2d 436, 437 (Ct. App. 1989). That approach is well established and need not be repeated here. *See generally Ford Farms, Ltd. v. Wisconsin Elec. Power Co.,* 145 Wis. 2d 650, 654–55, 430 N.W.2d 94, 95 (Ct. App. 1988). And, where all of the facts are stipulated, only a question of law remains which this court will decide *de novo,* without deference to the circuit court. *Mastercard v. Town of Newport,* 133 Wis. 2d 328, 330–31, 396 N.W.2d 345, 346–47 (Ct. App. 1986).

The sole legal issue is whether the automobile insurance policy's definition of "occupying" covers Kreuser's activities in this case.

We construe the words and phrases in insurance policies using the same rules we apply to all contracts. *Kremers-Urban Co. v. American Employers Ins. Co.,* 119 Wis. 2d 722, 735, 351 N.W.2d 156, 163 (1984). Our

objective in interpreting and construing the insurance policy is to carry out the true intentions of the parties. *Id.* The test used in construing an insurance policy is what a reasonable person in the position of the insured would have understood the words to mean. *Id.* The interpretation of the policy should further the insured's expectations of coverage. *Id.* We will give the words of the policy the same common and ordinary meaning a lay person would give. *Id.* Ambiguity arises in an insurance policy when words or phrases are fairly susceptible to more than one construction. *Id.* It is a question of law whether an ambiguity exists. *Id.* Finally, where no ambiguity exists in terms of the policy, we will not engage in constructions, but will merely apply the policy terms. *Id.* at 736, 351 N.W.2d at 103.

The question is whether a person preparing to enter an automobile but not yet having physical contact with the automobile is getting into that automobile so as to be occupying it as defined in the policy.

■

In Wisconsin it is not necessary that an individual have physical contact with an automobile before that person can be labeled an occupant under an automobile insurance policy. *Sentry Ins. Co. v. Providence Washington Ins. Co.,* 91 Wis. 2d 457, 459, 283 N.W.2d 455, 456–57 (Ct. App. 1979). In the *Sentry Ins.* case, this court held that an individual who had just stepped from the insured automobile and was standing in front of that automobile when struck by an uninsured motorist was "occupying" the insured vehicle. *Id.* at 460–61, 283 N.W.2d at 457.

In *Moherek v. Tucker,* 69 Wis. 2d 41, 43, 230 N.W.2d 148, 149 (1975), the injured party was pinned between the vehicle he had previously occupied and a second vehicle he and a friend were using to push the

first vehicle, when an uninsured motorist struck the second vehicle.

In *Moherek,* the supreme court established a test to determine whether or not an injured party was "occupying" the vehicle. The test considers whether the party was vehicle-oriented or highway-oriented at the time of the injury. The vehicle orientation test considers the nature of the act engaged in at the time of the injury and the intent of the person injured. *See id.* at 47–48, 230 N.W.2d at 151–52. To these two considerations we add a third: whether the injured person was within the reasonable geographical perimeter of the vehicle. *Robson v. Lightning Rod Mut. Ins. Co.,* 393 N.E.2d 1053, 1055 (Ohio Ct. App. 1978).

This vehicle orientation test is to be applied in this case. While the insurance policy's definition of "occupying" does not appear to be ambiguous when considered in a vacuum, it becomes ambiguous when determining the scope of coverage in fact situations such as that presented in this case. The ambiguity becomes apparent when it is necessary to determine what is meant by "getting into" a motor vehicle. Does it mean that the party must be seated; have a portion of his or her body inside the vehicle; or have his or her hand on the door handle? This phrase, having more than one potential meaning, leaves the insured in a quandary as to the extent of his or her coverage.

Applying the vehicle orientation test to the facts of this case provides coverage that the insured would reasonably believe he had under his policy.

Application of the vehicle orientation test leads us to the conclusion that Kreuser was "occupying" Hoffman's automobile at the time she was injured. Kreuser was within ten feet of Hoffman's vehicle and she was

beginning to turn to prepare to enter the vehicle when she was struck by the motorcycle. There is no doubt that both her intent and Hoffman's intent was to have Kreuser occupy the automobile. Kreuser had ridden with Hoffman in the past and he regularly picked her up at this corner of the 23rd Street and Racine Street intersection.

We are satisfied that an ordinary lay person would expect that people preparing to board an automobile come within the definition of occupying and would be afforded coverage if injured during the boarding process. If we were to say that the boarding person had to have actual physical contact with the insured vehicle we would unduly restrict coverage.

We conclude, as did the circuit court, that Kreuser was vehicle-oriented at the time of the accident; therefore, she was occupying the vehicle owned by Hoffman and insured by Heritage. Kreuser is entitled to payments under the uninsured motorist and medical payments provisions of the insurance policy.

*By the Court.*—Judgment affirmed.