In re the Estate of Steven M. Anderson:

Estate of Steven M. Anderson, by its
Personal Representative, Margaret Schink,
Plaintiff-Appellant,

v.

Abraham J. Pellett and Guaranty National
Insurance Company, Defendants,

Badger Mutual Insurance Company,
Defendant-Respondent.

Court of Appeals

*No. 2005AP2364. Submitted on briefs April 20, 2006.
—Decided June 21, 2006.*

2006 WI App 151

(Also reported in 720 N.W.2d 124.)

243

 

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *David J. Van Lieshout* of *Van Lieshout Law Office*, Little Chute.

On behalf of the defendant-respondent, the cause was submitted on the brief of *David G. Dudas* of *McCanna, Dudas & Kewley, S.C.*, Appleton.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

¶ 1. SNYDER, P.J. The Estate of Steven M. Anderson, by the personal representative, Margaret Schink, appeals from an order for summary judgment in favor of Badger Mutual Insurance Company. The Estate contends that the circuit court erred when it concluded that the Badger Mutual policy excluded underinsured motorist (UIM) coverage for Anderson. The policy excludes UIM coverage for injuries sustained while occupying a vehicle with fewer than four wheels. The court determined that the exclusion applied to Anderson, who was approximately fifty feet away from his motorcycle when he was hit and killed by another vehicle. The Estate argues that the exclusion clause should be interpreted narrowly, in contrast to coverage provisions which are interpreted broadly. It also argues that, when properly interpreted, the provision will not exclude coverage under the circumstances presented here. We agree and reverse the order for summary judgment in favor of Badger Mutual.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2. In the early morning hours of a rainy April 19, 2004, Anderson and a passenger, Dorothy Callaway, were on Anderson's motorcycle traveling west on U.S.

Highway 10/State Highway 441. According to the complaint, Anderson "lost control or voluntarily laid the motorcycle down on the side of the roadway due to weather conditions." Callaway was thrown about four car lengths, or approximately fifty feet, ahead of where the motorcycle went down.

¶ 3. Callaway recalls lying on the ground for a brief time and then starting to stand up. She testified that she felt stunned and it "took a little bit to sort my head." She saw Anderson walking toward her, asking her if she was okay. Callaway described her location as "off to the side of the road," and "up against the concrete." She recalls looking backwards at Anderson and the motorcycle because Anderson was talking to her as he approached. After Anderson asked about her condition, Callaway said that she wanted to "get back on the bike, and get out of [there]." However, Callaway described Anderson's overriding concern at the time as her well being rather than the need to get back on the motorcycle and leave.

¶ 4. About that time, a vehicle hit Anderson's motorcycle. Both Anderson and Callaway saw the motorcycle go flying past them. The same vehicle that had hit the motorcycle then hit Anderson. Callaway estimated that five minutes passed from the time she flew off the motorcycle to the time the car hit Anderson. Anderson died as a result of the impact.

¶ 5. Anderson's Estate brought a negligence claim and a wrongful death claim against the driver of the vehicle, Abraham J. Pellett, and his insurer, Guaranty National Insurance Company. The Estate also made a claim under the UIM endorsement to Anderson's automobile insurance policy with Badger Mutual. Badger Mutual moved for summary judgment, which the cir-

cuit court granted on grounds that coverage was excluded. The Estate appeals.

## DISCUSSION

¶ 6. We review summary judgment de novo, applying the same method as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Summary judgment is appropriate when there is no material factual dispute and the moving party is entitled to judgment as a matter of law. *Germanotta v. National Indem. Co.*, 119 Wis. 2d 293, 296, 349 N.W.2d 733 (Ct. App. 1984). Summary judgment methodology is well established and need not be repeated here. *See, e.g., Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶¶ 20–24, 241 Wis. 2d 804, 623 N.W.2d 751. Furthermore, the resolution of this case requires interpretation of a policy exclusion to determine whether coverage exists. "The construction and interpretation of a written insurance policy is a question of law that we review de novo." *Westphal v. Farmers Ins. Exch.*, 2003 WI App 170, ¶ 10, 266 Wis. 2d 569, 669 N.W.2d 166.

¶ 7. We turn first to the Badger Mutual policy language. The UIM policy endorsement and policy definitions read in relevant part:

EXCLUSIONS

B. We do not provide Underinsured Motorists Coverage for "bodily injury" sustained by any "insured":

3. While "occupying" any motorized vehicle having fewer than four wheels.

DEFINITIONS

G. "Occupying" means in, upon, getting in, on, out or off.

This case turns on whether Anderson was occupying the motorcycle, as defined in the policy, at the time he was struck by Pellett. If he was, the exclusion applies.

■

¶ 8. We construe the words and phrases in insurance policies using the same rules we apply to all contracts. *Kremers-Urban Co. v. American Employers Ins. Co.*, 119 Wis. 2d 722, 735, 351 N.W.2d 156 (1984). Our objective in interpreting and construing the insurance policy is to carry out the intent of the parties. *Id.* The test used in construing an insurance policy is what a reasonable person in the position of the insured would have understood the words to mean. *Id.* Ambiguity arises in an insurance policy when words or phrases are fairly susceptible to more than one construction. *Id.*

¶ 9. Our supreme court has previously addressed the definition of "occupying" in the context of an automobile insurance policy. In *Moherek v. Tucker*, 69 Wis. 2d 41, 45, 230 N.W.2d 148 (1975), the court held that the word "upon" in relation to "occupying" was ambiguous. The *Moherek* court cited *Allstate Insurance Co. v. Flaumenbaum*, 308 N.Y.S.2d 447 (1970), for the proposition that one need not have physical contact with the vehicle in order to occupy it: "[A] person has not ceased 'occupying' a vehicle until he has severed his connection with it - i.e., when he is on his own without any reference to it. If he is still vehicle-oriented, as opposed to highway-oriented, he continues to 'occupy' the vehicle." *Moherek*, 69 Wis. 2d at 47 (citation omitted). The *Moherek* court interpreted the term "occupying" broadly, to afford coverage to the insured.

¶ 10. In *Kreuser v. Heritage Mutual Insurance Co.*, 158 Wis. 2d 166, 170, 173, 461 N.W.2d 806 (Ct. App. 1990), we interpreted the term "occupying" in a coverage provision where the policy defined it as "in, on,

getting into or out of" using the vehicle-orientation test and adding an additional consideration: whether the claimant was within a reasonable geographic perimeter of the vehicle. There, the injured party was approximately ten feet from the insured vehicle and was preparing to enter it. *Id.* at 173–74. We were satisfied that an ordinary insured would expect that "people preparing to board an automobile come within the definition of occupying and would be afforded coverage if injured during the boarding process." *Id.* at 174. Thus, we did not interpret the term narrowly because it would "unduly restrict coverage." *See id.*

¶ 11. The Estate asserts that *Moherek* and *Kreuser* are distinguishable and we agree. Though the previous cases involved the interpretation of a definition similar to that in the Badger Mutual policy, *Moherek* and *Kreuser* addressed coverage provisions; here we must construe an exclusion clause. Where an insurance policy term is ambiguous, we resolve the ambiguities against the insurer. *Leatherman v. American Family Mut. Ins. Co.*, 52 Wis. 2d 644, 649, 190 N.W.2d 904 (1971), *superseded by statute on other grounds, see* Wis. Stat. § 632.32(4)(a) (uninsured motorist coverage). The principle that guides our analysis is that "[a]mbiguities in terms affording coverage are to be resolved in favor of coverage; ambiguities in exclusion clauses are construed narrowly, against the insurer." *Westphal*, 266 Wis. 2d 569, ¶ 21. With that in mind, we turn to the vehicle-orientation test.

¶ 12. The vehicle-orientation test considers whether the party was vehicle-oriented or highway-oriented at the time of the injury. *Kreuser*, 158 Wis. 2d at 173. It considers the nature of the act engaged in at

the time of the injury and the intent of the person injured. *Id.* It also asks whether the injured person was within the reasonable geographical perimeter of the vehicle. *Id.*

¶ 13. Applying the vehicle-orientation test to the facts and construing the definition narrowly, we conclude that Anderson was not vehicle-oriented at the time he was hit. Anderson had left the motorcycle behind and was approximately fifty feet away from it when the accident occurred. He was talking to Callaway, who had been thrown from the vehicle and was standing off to the side of the road. His "overriding concern" was Callaway's condition rather than the motorcycle. Anderson was neither walking toward the motorcycle nor turning toward the cycle when he was hit. Callaway estimated that approximately five minutes passed from the time she was thrown off the motorcycle to the time Anderson was hit by Pellett's car. By the time he was hit, Anderson had severed his relationship with the motorcycle and turned his focus to Callaway and her health and safety. *Cf. Moherek,* 69 Wis. 2d at 48 (claimant was vehicle-oriented and therefore occupying the vehicle where every action after getting out of the vehicle had to do with trying to start the vehicle so that he and his companions could continue on their way).

¶ 14. Badger Mutual emphasizes Anderson's activities in the hours preceding the accident. It argues that Anderson had never intended to stop on the highway but was mid-journey when he laid down the motorcycle. His intent, the argument goes, must have been to get back on the motorcycle. However, it is the facts immediately surrounding the accident that are relevant here. At the time he was hit, Anderson was not demonstrating any intent to get back on the motor-

cycle, nor was he making any physical attempt to return to the cycle. Badger also points to Callaway's statement that she told Anderson she wanted to get back on the motorcycle and leave. It is not Callaway's intent that is dispositive; rather, we look to Anderson's actions and intent at the time he was hit, as well as his location in relation to the motorcycle. *See Kreuser*, 158 Wis. 2d at 173.

¶ 15. Badger Mutual also suggests that we will find guidance in the line of cases applying the "use of an automobile" test instead of the vehicle-orientation test. The use of a vehicle is analyzed to determine whether the vehicle's connection with the activities that gave rise to the injury is sufficient to bring those activities within the risk contemplated by the insurance policy. *See Garcia v. Regent Ins. Co.*, 167 Wis. 2d 287, 295, 481 N.W.2d 660 (Ct. App. 1992). Badger Mutual reasons that "Wisconsin courts have consistently found 'use' and 'occupancy' in those factual situations where an accident occurs within a reasonable geographical proximity and time orientation to the vehicle. Applying that reasoning . . . Anderson was 'occupying' a motor vehicle having fewer than four wheels."

¶ 16. We are not persuaded. The *Garcia* case was construing policy language much different from the language at issue here.[1] We are not concerned with whether Anderson was *using* his motorcycle but rather

_____

[1] In *Garcia v. Regent Insurance Co.*, 167 Wis. 2d 287, 294, 481 N.W.2d 660 (Ct. App. 1992), the coverage phrases at issue arose from the terms "arising out of" and "use." There, one party argued the vehicle-oriented analysis on appeal. *Id.* at 295 n.6. We held that the party had waived the argument, but noted that

whether he was *occupying* it at the time he was struck and killed. The proper test to determine whether he was occupying the motorcycle is the vehicle-orientation test. *See Kreuser*, 158 Wis. 2d at 173.

¶ 17. Finally, Badger Mutual argues that some of Callaway's testimony is suspect. For example, Badger challenges Callaway's alleged statement that "about a minute" passed between the time the motorcycle went flying past and the time Anderson was hit.[2] Badger contends that this testimony "defies physics, logic and reality." We fail to see the relevance of this assertion, particularly in light of other record facts demonstrating Anderson's orientation immediately preceding and at the time of impact. Therefore, because we have already resolved the issue of coverage through our vehicle-orientation analysis, we need not address this argument.

## CONCLUSION

¶ 18. We conclude that Anderson was not occupying the motorcycle at the time of the accident. Our conclusion is founded on the principle that exclusion clauses in insurance contracts are to be interpreted narrowly. *See Westphal*, 266 Wis. 2d 569, ¶ 21. That interpretive principle distinguishes this case from *Moherek* and *Kreuser*, which construed the term "occupying" broadly, in favor of coverage. We further conclude

---

the vehicle-oriented analysis was "premised upon the 'occupancy' provisions of an insurance policy." *Id.*

[2] Badger Mutual somewhat mischaracterizes Callaway's testimony. She actually stated, "[j]ust less than a minute, if that" passed from when Pellett's vehicle hit the motorcycle until it hit Anderson.

that, because of the nature of his actions, his intent to check on his passenger, and his distance from the motorcycle, Anderson was not vehicle-oriented at the time of the impact. *See Kreuser*, 158 Wis. 2d at 173. Thus, summary judgment should not have been granted to Badger Mutual.

*By the Court.*—Order reversed and cause remanded.