# COURT OF APPEALS
# DECISION
# DATED AND FILED

## October 25, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP918**

**STATE OF WISCONSIN**

Cir. Ct. No. **2020CV198**

**IN COURT OF APPEALS
DISTRICT III**

TED C. VAN HANDEL,

PLAINTIFF-APPELLANT,

V.

MARCEL T. SHEPARD AND ERIE INSURANCE COMPANY,

DEFENDANTS,

FEDERATED MUTUAL INSURANCE COMPANY,

DEFENDANT-RESPONDENT,

U.S. VENTURE, INC. GROUP BENEFIT PLAN,

SUBROGATED DEFENDANT.

APPEAL from an order of the circuit court for Brown County: TAMMY JO HOCK, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. Ted Van Handel appeals a circuit court order granting Federated Mutual Insurance Company summary judgment and dismissing all claims against Federated with prejudice.  Van Handel argues that the court erred by ruling that he was not "occupying" an insured vehicle for purposes of an uninsured motorist policy ("the Policy") when he was run over by the driver of an uninsured vehicle.  He further argues that the Policy is ambiguous and invalid under WIS. STAT. § 632.32 (2019-20).[1]  We reject Van Handel's arguments and affirm the order.

## BACKGROUND

¶2      In February 2019, Van Handel was seriously injured after being run over by an uninsured vehicle driven by Marcel Shepard.  At the time of the accident, Van Handel was a service technician for U.S. Petroleum, a division of U.S. Venture, Inc.  Federated issued the Policy to U.S. Venture, which covered Van Handel's U.S. Venture Ford Transit work truck ("the Truck").  As a service technician, Van Handel conducted monthly inspections at gas stations where his duties included inspecting manways, which house a gas station's underground gas pumps, to see if "everything look[ed] dry, clean, and water-free."

¶3      On the day of the accident, Van Handel traveled to a gas station in Green Bay to perform a monthly inspection of its manways.  This particular gas

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

station had two manways, each with two covers: an outer cover to protect the inner cover, and an inner cover to keep liquid out of the pumps. Upon arrival, Van Handel parked his Truck eight feet away from the manways, and parallel to them so that the Truck could act as a barricade to his work area. Van Handel explained that the Truck was a "mobile toolbox" because he would go in and out of it "20 to 100" times a day to get tools that he needed.

¶4 After parking the Truck, Van Handel left the keys in the ignition and kept the Truck running.[2] Van Handel then spent a short period of time on his work-issued iPad to prepare for the inspection.[3] Afterward, he exited the Truck, obtained orange cones from the Truck, and positioned the cones around his work

---

[2] As Federated points out on appeal, there are two sources of often contradicting statements by Van Handel. The first source of information is Van Handel's October 2020 deposition. The second is Van Handel's January 2021 affidavit. In the circuit court, Federated contended that the January 2021 affidavit was a "sham affidavit" used to create genuine issues of material fact. *See Yahnke v. Carson*, 2000 WI 74, ¶2, 236 Wis. 2d 257, 613 N.W.2d 257 (adopting the federal sham affidavit rule for summary judgment procedure). On appeal, Federated renews this contention. Conversely, Van Handel counters that "Federated admits that these allegedly new facts 'in any event … do not change the outcome under the vehicle-orientation test.' The [c]ircuit [c]ourt did not address Federated's allegation of a 'sham affidavit,' and so these arguments need not be accorded any weight or considered by this [c]ourt of [a]ppeals."

We need not decide the sham affidavit issue because we conclude that any factual differences between the deposition and the affidavit, or in the record generally, are not material. Further, we consider the facts in the light most favorable to Van Handel as the party opposing summary judgment. *See United Concrete & Const., Inc. v. Red-D-Mix Concrete, Inc.*, 2013 WI 72, ¶12, 349 Wis. 2d 587, 836 N.W.2d 807. Therefore, the facts most favorable to Van Handel will be relied upon throughout this opinion, regardless of the source.

[3] In Van Handel's brief-in-chief, he contends that he used his iPad while in the Truck *after* going into the gas station. In support, Van Handel cites to his January 2021 affidavit. However, Van Handel's affidavit states that he was on the iPad after parking but *before* going into the gas station. Van Handel correctly notes the order of events in his reply brief. We will therefore not consider Van Handel's assertion that he was on his iPad after entering the gas station. *See Nelson v. Schreiner*, 161 Wis. 2d 798, 804, 469 N.W.2d 214 (Ct. App. 1991) ("Assertions of fact that are not part of the record will not be considered.").

area. Van Handel then walked into the gas station to get readings off of the tank monitors, spoke to the manager, and returned to the manways. Roughly one to two minutes before opening the first manway, Van Handel grabbed a pry bar and some other tools from the Truck. He then walked back to the manways and opened the first cover of one of the manways, which took roughly one or two minutes.

¶5      As Van Handel was crouched over the manway and "looking in the hole at the inner cover to see if [he] would need additional tools[, he] heard an engine rev" and was then run over by Shepard's uninsured vehicle, which was reversing from a gas pump. Van Handel was facing Shepard's vehicle when he was struck.[4]  At least five minutes elapsed between the time when Van Handel pulled into the gas station parking lot and when he was hit by Shepard's vehicle.

¶6      Van Handel subsequently requested coverage under the Policy's uninsured motorist provision, which Federated denied. Federated reasoned that Van Handel did not qualify as an "insured" under the Policy because he was not "occupying" an "auto" while working on the manways. Van Handel then filed suit against several parties, including Federated, demanding compensatory damages. Federated moved for summary judgment, seeking to dismiss Van Handel's claims against Federated with prejudice.

---

[4] Van Handel argues in his reply brief that there are genuine issues of material fact concerning whether his back was to the Truck when he was facing Shepard's vehicle. We first note that his citations to the record do not support this assertion, in violation of WIS. STAT. RULE 809.19(1)(e). In fact, Van Handel's reply brief violates this rule multiple times. We admonish counsel that future violations of the Rules of Appellate Procedure may result in sanctions. *See* WIS. STAT. RULE 809.83(2). Second, we fail to see how whether Van Handel's back was to the Truck or not is a material fact, given that Van Handel stipulates that he was facing Shepard's vehicle at the time of the accident. *See supra* n.2.

4

¶7 The circuit court granted Federated's motion for summary judgment, concluding that at the time of the accident, Van Handel was not "vehicle-oriented" and therefore was not "occupying" the Truck. *See* ***Kreuser v. Heritage Mut. Ins. Co.***, 158 Wis. 2d 166, 173, 461 N.W.2d 806 (Ct. App. 1990). Specifically, the court held that although Van Handel was only eight feet from the Truck when he was hit, he was opening one of the manways and intended to inspect it. He was not walking back toward the Truck and showed no intention of doing so at the moment of the accident. Lastly, the court noted that Van Handel's use of the Truck as a "mobile toolbox" was not a valid consideration in determining whether he was "occupying" it at the time of the accident. Van Handel now appeals.

## DISCUSSION

¶8 We independently review a grant of summary judgment using the same methodology as the circuit court. ***Kemper Indep. Ins. Co. v. Islami***, 2021 WI 53, ¶13, 397 Wis. 2d 394, 959 N.W.2d 912. "Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law." ***Id.*** (citation omitted). Similarly, the interpretation of an insurance contract is a question of law that we review de novo. ***Fontana Builders, Inc. v. Assurance Co. of Am.***, 2016 WI 52, ¶37, 369 Wis. 2d 495, 882 N.W.2d 398.

## I. Van Handel was not "occupying" the Truck

¶9 "Judicial interpretation of a contract, including an insurance policy, seeks to determine and give effect to the intent of the contracting parties." ***American Fam. Mut. Ins. Co. v. American Girl, Inc.***, 2004 WI 2, ¶23, 268 Wis. 2d 16, 673 N.W.2d 65. We construe insurance policies "as they would be understood by a reasonable person in the position of the insured." ***Id.***

5

¶10    Our interpretation of an insurance contract is outlined in three steps. *Id.*, ¶24. First, we "determine whether the policy's insuring agreement makes an initial grant of coverage. If it is clear that the policy was not intended to cover the claim asserted, the analysis ends there." *Id.* If the policy does grant coverage, we next examine any exclusions and then any exceptions to the exclusions. *Id.*

¶11    We agree with Federated that the Policy does not make an initial grant of coverage under the facts in this case. We therefore need not evaluate the remaining steps outlined in *American Girl*.

¶12    As stated earlier, the Truck in this case was insured by U.S. Venture through Federated. In relevant part, the Policy on the Truck states that Federated will:

> [P]ay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle." The damages must result from "bodily injury" sustained by the "insured" caused by an "accident." The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle."

The Policy further provides that if a named insured is "[a] partnership, limited liability company, corporation or any other form of organization," then "insureds" include "[a]nyone '*occupying*' a covered 'auto.'" (Emphasis added.) "Occupying" is defined by the Policy to mean "in, upon, getting in, on, out or off." Federated acknowledges that Shepard's vehicle was uninsured and that U.S. Venture is a named insured under the Policy. Therefore, the dispute before us is whether Van Handel was "occupying" the Truck at the time of the accident.

¶13    Because our supreme court "has recognized that commonly used terms like 'upon,' 'in' and 'entering into or alighting from' may be ambiguous,

and because this language normally varies only slightly from contract to contract, Wisconsin courts have tended to apply a standardized meaning to the term 'occupy.'" *Mau v. North Dakota Ins. Rsrv. Fund*, 2001 WI 134, ¶46, 248 Wis. 2d 1031, 637 N.W.2d 45 (Wilcox, J., dissenting) (citation omitted). A standardized method to determine whether an injured party was "occupying" a vehicle for purposes of automobile insurance policy coverage was adopted by our supreme court and is referred to as the "vehicle orientation test." *See Moherek v. Tucker*, 69 Wis. 2d 41, 48, 230 N.W.2d 148 (1975); *Kreuser*, 158 Wis. 2d at 173 ("In *Moherek*, the supreme court established a test to determine whether or not an injured party was 'occupying' the vehicle.").

¶14     The "vehicle orientation test" asks whether the injured person was "vehicle-oriented" or "highway-oriented." *See Moherek*, 69 Wis. 2d at 47 (citation omitted). If the injured person was "vehicle-oriented," he or she was "occupying" the vehicle for purposes of the automobile insurance policy. *Id.* "[I]t is not necessary that an individual have physical contact with an automobile" to be vehicle-oriented. *Kreuser*, 158 Wis. 2d at 172. The question is instead whether the individual "ha[d] severed his [or her] connection with [the vehicle]—i.e., when he [or she was] on his [or her] own without any reference to it." *Moherek*, 69 Wis. 2d at 47 (citation omitted). The "vehicle orientation test" has three considerations: "the nature of the act engaged in at the time of the injury[,] the intent of the person injured … [and] whether the injured person was within the reasonable geographical perimeter of the vehicle." *Kreuser*, 158 Wis. 2d at 173 (adding a third consideration to the *Moherek* analysis).

¶15     Van Handel argues that he was "occupying" the Truck at the time of the accident because: (1) "one minute before the accident" he grabbed tools from the Truck; (2) his intent "after [the] inspection was to immediately re-enter his

7

truck (as evidenced by the running engine) and drive to the next jobsite;" and (3) he was eight feet from the Truck when he was injured.[5]  Conversely, Federated contends Van Handel was not "occupying" the Truck because, at the time of the accident, he was "crouched over a manway, intending to open the inner cover in order to inspect it."

¶16    Both parties cite to *Moherek* to support their respective positions.  In *Moherek*, our supreme court considered whether an individual was "occupying" a vehicle for purposes of an uninsured motorist policy.  *Moherek*, 69 Wis. 2d at 42. The individual was with a group of people in an insured car that broke down on the side of a highway.  *Id.* at 42-43.  Initially thinking the car was out of gas, the individual flagged down another car and went to get gas, returning roughly thirty to forty minutes later.  *Id.* at 43.  After determining that gas was not the issue, the group flagged down another car.  *Id.*  It was decided that the new car would push the group's car in an attempt to start it.  *Id.*  To avoid scratching either car, the individual held a spare tire between the cars' bumpers.  *Id.*  As the new car pushed the group's car, a third, uninsured car crashed into the pushing car, pinning the individual between the pushing car and the group's insured car.  *Id.*  Forty-five minutes had passed from the time the individual got out of vehicle to when the accident occurred.  *Id.*  Prior to being pinned, the individual turned and started to "take a stride away" from the cars.  *Id.*  Despite this fact, the court concluded that the individual had not severed his relationship with the group's insured car and was therefore covered under the uninsured motorist policy.  *Id.* at 48.  The court

_____

[5] Van Handel also argues there are genuine issues of material fact that warrant a reversal of the summary judgment order.  Again, we hold that any factual differences in the record as a whole are immaterial, and we base our analysis on the facts most favorable to Van Handel.  *See supra* n.2.

reasoned that "[e]verything that [the individual] did after getting out of the vehicle and especially at the time that his injury occurred had to do with trying to start the vehicle again so that he and his companions could continue on their journey." *Id.*

¶17    Similar to *Moherek*, in *Kreuser*, we analyzed whether an individual was "occupying" a vehicle for purposes of coverage under an uninsured motorist policy. *Kreuser*, 158 Wis. 2d at 168. The policy in that case defined "occupying" as "in, on, getting into or out of" a vehicle. *Id.* at 170. The driver in *Kreuser* intended to pick up an individual at the corner of an intersection. *Id.* at 169. The driver's "intention was to pull over to the curb … to allow" the individual to enter his car. *Id.* When the individual was ten feet from the car, a motorcycle hit the driver's car, causing the car to slam into the individual. *Id.* As the motorcycle hit the driver's car, the individual was "turn[ing] so that she would be in a position to enter" the car. *Id.* We held that the individual was vehicle-oriented to the driver's insured car and therefore "occupying" the car at the time of the accident because she was within ten feet of the car, she was beginning to turn to enter the car, and the intent of the driver and the individual was to have the individual occupy the car. *Id.* at 173-74.

¶18    In another case, we analyzed an underinsured motorist policy that defined "occupying" identically to the Policy in this case—that is, "occupying" was defined as "in, upon, getting in, on, out or off" a vehicle. *See Anderson v. Pellette*, 2006 WI App 151, ¶7, 295 Wis. 2d 243, 720 N.W.2d 124. In *Anderson*, the driver and a passenger were travelling on a motorcycle and crashed. *Id.*, ¶2. The passenger was thrown approximately fifty feet from where the motorcycle "went down." *Id.* After the crash, the driver got up and walked toward the passenger to check on her. *Id.*, ¶3. Five minutes later, while the two riders were still on the side of the road, a car driving by them hit the motorcycle and then hit

the driver of the motorcycle. *Id.*, ¶4. We concluded that the motorcycle driver was not vehicle-oriented to the motorcycle because he had left the motorcycle behind and his "overriding concern" was with the passenger's health. *Id.*, ¶13. He was "neither walking toward the motorcycle nor turning toward the cycle when he was hit." *Id.* Further, he was roughly fifty feet away from the motorcycle when the accident occurred, and approximately five minutes had passed since he was last on the motorcycle. *Id.*

¶19 Based on the above cases, Van Handel was not "in, upon, getting in, on, out or off" the Truck. Instead, his actions and intentions at the time of the accident show he had severed his connection with the Truck. As Federated points out on appeal, the deciding fact in the above cases is that the insured vehicles played some significant role in the course of the injury. Here, the Truck played no role in Van Handel's injury. Seconds before the accident, Van Handel was crouched over and inspecting the manways—he was not, for example, sitting in the Truck or getting tools from the Truck.[6] Similarly, at the time of impact, Van Handel was still crouched over the manway, facing Shepard's vehicle. Like the driver in *Anderson*, Van Handel's actions and intentions at the time of the accident had nothing to do with the vehicle—Van Handel was not, for example, "walking toward [the Truck or] turning toward [the Truck] when he was hit."

---

[6] In Van Handel's reply brief, he contends that his intent was to protect himself at the time of the accident. The record citation Van Handel provides does not support this assertion. After searching the record, we fail to find support for Van Handel's factual assertion that his intent at the time of the accident was to protect himself. To the extent Van Handel argues that he was protecting himself by using the Truck as a "barricade," he fails to explain how that fact would impact our "vehicle orientation" analysis when the Truck played no actual role in the accident. We therefore will not consider this argument further. *See M.C.I., Inc. v. Elbin*, 146 Wis. 2d 239, 244-45, 430 N.W.2d 366 (Ct. App. 1988) (we need not consider unexplained and undeveloped arguments).

*See id.*, ¶13.  Like in *Anderson* where the driver's "overriding concern" was with the passenger's health, *see id.*, Van Handel's "overriding concern" was on inspecting the manways.

¶20     Van Handel's actions of inspecting the manway seconds before the accident, and crouching over the manway at the time of the accident, differs significantly from the individual in *Kreuser*, who was in the process of getting into the driver's insured vehicle at the time of the accident.  Van Handel also differs from the individual in *Moherek*, who was assisting in starting the insured car so that the group could leave.  Unlike the individual there, Van Handel's actions did not have "[e]verything … to do with" the Truck "so that he … could continue on [his] journey."  *See Moherek*, 69 Wis. 2d at 48.  Again, Van Handel's actions were entirely focused on inspecting the manways and, at the time of impact, Van Handel was facing Shepard's vehicle while crouched over the manway.  Although Van Handel was only eight feet from the Truck at the time of the accident, that fact is not dispositive.  Rather, the operative consideration is whether, at the time of the accident, Van Handel had severed his connection with the Truck.

¶21     Van Handel next argues that his intent after the inspection was to get back into the Truck and drive to the next job site.  In other words, Van Handel asserts that he was "occupying" the Truck because he eventually intended to get back into it, as evidenced by the fact that he kept the Truck's engine running.  We rejected a similar argument in *Anderson*.  There, the driver's estate argued that he was "occupying" the motorcycle because he intended at some point to get back onto it.  *Anderson*, 295 Wis. 2d 243, ¶14.  We concluded, however, that "*it is the facts immediately surrounding the accident that are relevant* here.  At the time he was hit, Anderson was not demonstrating any intent to get back on the motorcycle,

nor was he making any physical attempt to return to the cycle." *Id.* (emphasis added); *cf. Moherek*, 69 Wis. 2d at 48 ("Everything that [the individual] did after getting out of the vehicle and especially at the time that his injury occurred had to do with trying to start the vehicle again so that he and his companions could continue on their journey."). As discussed above, Van Handel's intent just prior to the accident had nothing to do with the Truck and everything to do with inspecting the manways. As Van Handel heard the engine of Shepard's vehicle revving, he turned around. Because Van Handel's intention had nothing to do with the Truck at the time of the accident, his argument that he eventually intended to get back into the Truck fails to alter our conclusion.

¶22 Likewise, Van Handel's reliance on his use of the Truck, including that it was his "mobile toolbox," is unpersuasive. Like Van Handel's previous argument, this issue was also addressed in *Anderson*. There, we held that based on the text of the insurance policy in question, we were "not concerned with whether [the driver] was *using* his motorcycle but rather whether he was *occupying* it at the time he was struck and killed. The proper test to determine whether he was occupying the motorcycle is the vehicle-orientation test." *Anderson*, 295 Wis. 2d 243, ¶16.

¶23 Similarly, here, the dispute is not whether Van Handel was "using" the Truck at the time of the accident. The Policy does not include coverage for the "use" of a covered vehicle stemming from an accident involving an uninsured motorist. Instead, the Policy states that Federated will "pay all sums the 'insured' is legally entitled to recover … from the owner[] or driver of an 'uninsured motor vehicle'…. The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the 'uninsured motor vehicle.'" As noted, "use" refers to the "uninsured motor vehicle," and the Policy requires damages to

result from ownership, maintenance or use of that vehicle—not the insured vehicle. Thus, like in *Anderson*, the Policy in this case does not concern the "use" of the insured vehicle. *See id.*

¶24     We are similarly unpersuaded by Van Handel's reliance on the brief time between when he grabbed tools from the Truck to when he was run over. Van Handel argues that, similar to *Hunt ex rel. Gende v. Clarendon National Insurance Service, Inc.*, 2005 WI App 11, ¶¶24, 30, 278 Wis. 2d 439, 691 N.W.2d 904 (2004), Van Handel "was struck within one or two minutes of being in contact with [the T]ruck." In *Hunt*, a child had exited a school bus, "immediately" walked behind the bus, and then was hit. *Id.*, ¶¶28, 30. We concluded that the child was "occupying" the bus for purposes of an uninsured motorist policy. *See id.*, ¶4. However, Van Handel's relationship to the Truck is very different from the child's relationship to the bus in *Hunt*. Unlike the child in *Hunt*, Van Handel did not exit the Truck or turn around from the Truck "immediately" before Shepard's vehicle hit him. *See id.*, ¶30. The accident occurred one to two minutes after Van Handel got the tools from the Truck. As discussed, Van Handel's intention seconds before the accident was to inspect the manways. At the time of the accident, he was still crouched over one of the manways and was facing Shepard's vehicle. Further, the Truck was not involved in the accident, unlike in *Hunt*, where the bus blocked the child's view and played a part in the accident. *See id.*, ¶28.

¶25     We conclude that a reasonable person in the position of the insured would not have understood Van Handel's situation to fall within the definition of "occupying" the Truck at the time of the accident. As such, the Policy was not intended to cover Van Handel's claim, and he is not entitled to uninsured motorist

coverage under the Policy as a matter of law. The circuit court properly granted Federated's summary judgment motion.

## II. Remaining arguments forfeited

¶26 Van Handel next asserts that "[b]ecause [the Policy] is blank as to the 'named insured,' but clearly extends initial coverage to Van Handel, the ambiguous definition requiring 'occupancy' is invalid and barred by WIS. STAT. § 632.32 and other inapplicable [sic] law." This argument is difficult to decipher, hard to follow, and conflates two distinct arguments: (1) that "occupying" as used in the Policy is ambiguous; and (2) that the Policy violates § 632.32. In any event, we need not address the merits of Van Handel's argument because, as we will explain below, we conclude that Van Handel forfeited any argument related to ambiguity in the Policy or to § 632.32's applicability.

¶27 We start with Van Handel's ambiguity argument. Federated argues that Van Handel forfeited this argument by not raising it before the circuit court. Alternatively, Federated contends that "occupying" is unambiguous because the "vehicle orientation test" instructs the meaning of the term "occupy" and how to determine occupancy of a vehicle for uninsured coverage purposes. *See **Mau***, 248 Wis. 2d 1031, ¶46 (Wilcox, J., dissenting). In response to Federated's forfeiture argument, Van Handel asserts that he did raise an ambiguity argument in opposition to Federated's motion for summary judgment.[7]

---

[7] Van Handel also cites ***Townsend v. Massey***, 2011 WI App 160, ¶25, 338 Wis. 2d 114, 808 N.W.2d 155, to argue that forfeiture does not apply to his ambiguity and WIS. STAT. § 632.32 arguments because forfeiture "focuses on whether particular arguments have been preserved, not on whether general issues were raised before the circuit court." He does not elaborate on how ***Townsend*** applies to this case, nor is it apparent to us, and we will therefore not consider that case further. *See **M.C.I.***, 146 Wis. 2d at 244-45.

¶28   Our review of the record, however, shows that Van Handel's summary judgment brief did not raise an ambiguity argument.   Instead, Van Handel applied the "vehicle orientation test."   In fact, the only time Van Handel referenced any ambiguity was in describing the facts in *Moherek*. We therefore agree with Federated that Van Handel forfeited his argument that the Policy is ambiguous.   *See **Northbrook Wis., LLC v. City of Niagara***, 2014 WI App 22, ¶20, 352 Wis. 2d 657, 843 N.W.2d 851 ("Arguments raised for the first time on appeal are generally deemed forfeited.").

¶29   Similarly, Van Handel argues for the first time on appeal that the "occupancy" requirement in the Policy is invalid under WIS. STAT. § 632.32. Van Handel's argument is that the "occupancy" requirement in this case is an exclusion because he is otherwise a named insured under the Policy.   *See **Mau***, 248 Wis. 2d 1031, ¶¶33-34.   Therefore, he contends that § 632.32(6)(b)2.a.—which states that "[n]o policy may exclude from the coverage afforded or benefits provided" to "[a]ny person who is a named insured"—invalidates the Policy's "occupancy" requirement.   *See **Mau***, 248 Wis. 2d 1031, ¶34.[8]

¶30   Like Van Handel's ambiguity argument, however, we need not address this argument because Van Handel forfeited it by not making it at the circuit court level.   *See **Northbrook***, 352 Wis. 2d 657, ¶20.   Also, like his ambiguity argument, Van Handel cites to his trial brief filed in opposition to

---

[8] We pause to note that, unlike in *Mau v. North Dakota Insurance Reserve Fund*, 2001 WI 134, ¶27, 248 Wis. 2d 1031, 637 N.W.2d 45, Van Handel is not a "named insured" under the Policy.  To the contrary, the named insured is U.S. Venture.  Under the Policy, Van Handel was "insured[]" for purposes of uninsured motorist coverage only if he was "occupying" the Truck. We have already concluded that Van Handel was not "occupying" the truck.  Therefore, this case is factually distinguishable from *Mau*.

Federated's motion for summary judgment to argue that he made the argument before the circuit court. Yet, nowhere in his summary judgment brief does he cite to WIS. STAT. § 632.32 or raise any argument that closely resembles the one he now makes on appeal. *See **Bishop v. City of Burlington***, 2001 WI App 154, ¶8, 246 Wis. 2d 879, 631 N.W.2d 656 ("A litigant must raise an issue with sufficient prominence such that the [circuit] court understands that it is being called upon to make a ruling.").

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.