**Curtis WICKHAM, Appellant,**

v.

**EQUITY FIRE AND CASUALTY COMPANY, Appellee.**

No. 84181.

Court of Appeals of Oklahoma,
Division No. 1.

Oct. 18, 1994.

Certiorari Denied Jan. 24, 1995.

---

**17.** *Hunter,* 829 P.2d at 67.

**18.** 22 O.S.1981, § 1084, *Johnson,* 823 P.2d at 373.

**19.** *Id.*

M. Jean Holmes, Tulsa, for appellant.

Mark A. Warman, Tulsa, for appellee.

### MEMORANDUM OPINION

CARL B. JONES, Judge:

One night in November, 1992, when a vehicle driven by Christopher McClain lost its left rear wheel, Appellant Curtis Wickham, who had been following McClain, stopped to help him reattach the wheel. Wickham and McClain searched McClain's trunk by the feeble glow of a cigarette lighter to find the necessary tools; Wickham put his knees on McClain's bumper to see into the trunk. As Wickham kneeled to tighten the last lug nut to remount the lost wheel, a car driven by James Wade struck Wickham, seriously injuring him.

Wickham and his wife[1] sued McClain's insurer, Equity Fire and Casualty Company ["Equity"], asserting they were entitled to recover on the uninsured motorist coverage Equity included in the automobile insurance policy it had sold to McClain. Equity denied coverage and moved for summary judgment, asserting Wickham was not insured by the policy. Wickham opposed the motion and filed a cross-motion for summary judgment, in which he asserted he was entitled to coverage because he was injured while trying to repair McClain's vehicle. The trial court granted summary judgment in favor of Equity, and denied Wickham's motion to reconsider.

The policy in question extended UM coverage to "[a]nyone occupying, with your[2] permission, a car we insure . . ." [Plaintiff's Exh. B, p. 7 (footnote added).] In this respect, the UM coverage at issue here is distinguished from coverage available to the named insured's household [see Note 2], which applied even if the insured was a pedestrian. The policy defined "Occupying" as "in, on, getting in or on, or getting off or out of."

■ ■ ■ The determining factor in resolving the issue presented is: What was the intention of the parties to the contract? *Torres v. Kansas City Fire & Marine Ins. Co.*, 849 P.2d 407, 412 (Okla.1993). An insurance policy, like any other contract, is interpreted to give effect to such intention—to the extent possible, from the written terms used in the contract. 15 O.S.1991 §§ 151, 152, 155; *Provident Life & Accident Ins. Co. v. Ridenour*, 838 P.2d 530, 531 (Okla.App.1992). Unless otherwise indicated, the words of a written contract are to be understood in their ordinary and popular sense, 15 O.S.1991 § 160, but when the meaning of a contract

term is uncertain, or when the term can bear more than one reasonable interpretation, the term is ambiguous, and must be interpreted most favorably to the insured. *Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 376–77 (Okla. 1991).

The problem here is especially thorny because the relevant components of the definition—"in," "on," etc.—are words at once so common yet not possessing a single meaning. As observed by the Illinois Court of Appeals: "The words themselves are simple, every-day words, but the variety of situations which they define is broad. Sometimes it will appear clear and at other times doubtful whether a particular set of circumstances is within the meaning of the provision." *Wolf v. American Casualty Co.*, 2 Ill.App.2d 124, 118 N.E.2d 777, 780 (1954).

■ ■ The parties have cited only one Oklahoma case touching on the interpretation of "occupying," and we have found no others. In *Willard v. Kelley*, 803 P.2d 1124 (Okla. 1990), a Tulsa policeman chased down a robbery suspect, and then exited his patrol car and exchanged shots with the suspect. The relevant question in *Willard*, for purposes of the present case, was whether Officer Willard qualified for medical payments coverage under his personal insurance policy. The opinion did not recite the exact terms of Willard's medical payments coverage, except to say that "occupying" a vehicle included both "alighting from" and "entering into" the vehicle. *Willard*, 803 P.2d at 1127, 1132–33. Without extensive discussion, the supreme court held the policy definition was broad enough to encompass the facts of Willard's claim. *Id.*, 803 P.2d at 1133.[3]

Equity suggests we should follow (and are obliged to follow) the "guidance" of *Willard*.

---

**1.** Vickie Wickham pressed a claim for loss of consortium due to the injuries her husband suffered in the accident, but later dismissed her claim without prejudice.

**2.** "Your" refers to the named insured, or spouse, or a family member residing in the named insured's household. The parties here stipulated that Wickham did not meet any of those categories.

**3.** "Willard was shot *immediately after* he alighted from his seat . . . [O]nce the gunfire had ceased, he found himself leaning *on* his car seat, knees on the ground." *Willard*, 803 P.2d at 1132–33 (emphasis original).

In a somewhat tautological argument, based on its perception of such "guidance," Equity argues that to occupy a vehicle, one must have physically occupied the vehicle, or must have intended to do so. The parties here stipulated that Wickham "never physically occupied the interior of the vehicle ... nor did he ever intend on [*sic*] physically occupying the vehicle," so Equity concludes Wickham did not occupy McClain's vehicle.

Wickham responds that Equity's interpretation is unreasonably narrow, and conflicts with the spirit and the letter of the uninsured motorist statute, 36 O.S.1991 § 3636, and, in particular, subsection (B) of the statute, which requires automobile liability policies to provide coverage (unless rejected) "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles ..." Instead, Wickham asserts, we should at least adopt a "physical contact" test used by other courts,[4] according to which he would be entitled to coverage because he was in contact with the wheel of McClain's car when struck.

A variety of other tests have been employed by the courts to determine whether a person was occupying a vehicle. *See, e.g., Kreuser v. Heritage Mut. Ins. Co.,* 158 Wis.2d 166, 461 N.W.2d 806, 808 (Ct.App.), *cert. denied,* 464 N.W.2d 424 (1990) ("vehicle orientation" test considers whether injured person was "vehicle-oriented" or "highway-oriented" at the time of the accident); *Utica Mut. Ins. Co. v. Contrisciane,* 504 Pa. 328, 473 A.2d 1005 (1984) (same, but also requiring "reasonably close geographic proximity" to insured vehicle, and engagement in a "transaction essential to the use of the vehicle").

We agree that Equity's proffered interpretation of its policy is too narrow, but we decline to adopt any bright-line test to determine whether someone occupied a vehicle for purposes of UM coverage. We are persuaded, instead, that the determination of whether the policy definition of "occupying" is satisfied should be left to a case-by-case analysis, depending on the circumstances of the accident, the use of the vehicle, the relevant terms of the coverage at issue, and any underlying public policy considerations. *See also Mondelli v. State Farm Mutual Auto. Ins. Co.,* 102 N.J. 167, 506 A.2d 728, 730 (1986) (Petrella, J.A.D., concurring in part and dissenting in part).

Turning now to the facts of this case, we conclude that the word "occupying," as defined in the Equity policy, is broad enough to include a person such as Wickham who had looked through the trunk for tools, who was performing repairs on the vehicle, and who was situated next to the vehicle, tightening a lug nut on the wheel. We find support for this conclusion in decisions from other states which have considered similar situations and applied similar, if not identical, policy provisions. *See Tata v. Nichols,* 848 S.W.2d 649, 653–54 (Tenn.1993) (plaintiff who was under the hood of another's car attaching jumper cables was "upon" the car for purposes of uninsured motorist coverage extended to persons "occupying" the car; extensive review of authorities); *Martinez v. Great American Ins. Co.,* 499 So.2d 364, 366 (La.App.1986), *rev'd in part on other grounds,* 503 So.2d 1005, 1006 (La.1987) (wrecker driver who had hooked up disabled truck to his wrecker and was standing between them to operate lift mechanism was "occupying" truck for purposes of uninsured motorist coverage); *Pope v. Stolts,* 712 S.W.2d 434 (Mo.App.1986) (plaintiff leaning over engine compartment of neighbor's car reaching to attach jumper cables, with stomach and knees touching the car, was "upon" the car and therefore "occupying" it for purposes of uninsured motorist coverage). We also find that a broad interpretation of "occupying" is consistent with the public policy underpinnings of the uninsured motorist statute.

4. *See, e.g., Testone v. Allstate Ins. Co.,* 165 Conn. 126, 328 A.2d 686 (1973). *Cf., generally,* Annot., Automobile insurance: When is a person "occupying" an automobile within meaning of medical payments provision," 42 A.L.R.3d 501, 509–11 (1972).

We therefore conclude that the trial court erred by granting summary judgment in favor of Equity, and by denying Wickham's request for summary adjudication of the availability of UM coverage on the Equity policy. The trial court judgment is reversed, and this cause is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

HANSEN, P.J., and GARRETT, V.C.J., concur.