700 S.E.2d 258

### SOUTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, Appellant,

v.

### Henry KENNEDY, Respondent.

### No. 4738.

Court of Appeals of South Carolina.

Heard May 18, 2010.

Decided Sept. 15, 2010.

Rehearing Denied Oct. 28, 2010.

Karl S. Brehmer and L. Darby Plexico, III, of Columbia, for Appellant.

Eric H. Philpot, of Greenville, for Respondent.

SHORT, J.

South Carolina Farm Bureau Mutual Insurance Company (Farm Bureau) appeals from the trial court's order finding

Henry Kennedy was entitled to underinsured motorist (UIM) coverage, arguing the court erred in finding Kennedy was occupying the manure truck when he was hit by the pickup truck because he was not "upon" the insured vehicle at the time of the accident. We reverse.

## FACTS

On October 23, 2002, Kennedy was hurt in a pedestrian-vehicle accident.[1] Kennedy was employed by Irons Poultry Farms, Inc. (Irons Poultry), and at his employer's direction, Kennedy drove the company's manure truck to a restaurant to tell the owner he could pick up some chicken feed at his employer's farm. After delivering the message, Kennedy paused in the restaurant parking lot to talk to his half-brother, Teddy Robinson, who worked at the restaurant. While Kennedy was talking to Robinson, an accident occurred on the highway adjacent to the parking lot, and one of the vehicles careened into the parking lot, striking Kennedy and Robinson who were standing behind the manure truck. The vehicle that struck Kennedy was a pickup truck driven by George Counts. Kennedy sustained injuries with medical costs and lost wages totaling more than $64,000; however, he settled with Counts' insurance company for $50,000 in exchange for a covenant not to execute. Kennedy then made a demand for the full amount of UIM coverage available under Irons Poultry's policy with Farm Bureau. The policy provided UIM coverage in the amount of $50,000 per individual, and $100,000 per occurrence. Farm Bureau denied Kennedy coverage, claiming Kennedy was not entitled to UIM coverage under the policy because he was not occupying Irons Poultry's manure truck at the time of the accident as required by the policy to qualify for UIM coverage. Farm Bureau's policy defined "occupying" as "having actual physical contact with an auto while in, upon, entering, or alighting from it."

On April 21, 2004, Farm Bureau filed a declaratory judgment action to determine if Kennedy was entitled to UIM coverage under Farm Bureau's commercial auto policy issued to Irons Poultry. Kennedy filed a motion for summary judg-

---

1. Most of the facts of this case were stipulated in an agreement entered into by the parties in May 2005.

ment, asserting he was entitled to coverage under the policy because the evidence conclusively proved he was pinned between the manure truck and Counts' truck, thus establishing he was "upon" the truck. The case was set for a non-jury trial on May 11, 2005. Before trial, Kennedy requested Judge Saunders hear his motion for summary judgment. Judge Saunders granted the motion in an order dated June 16, 2005.[2] Farm Bureau filed a motion for reconsideration, which was denied. Farm Bureau then filed an appeal with this court. After oral arguments on the case, this court found a genuine issue of material fact existed as to whether Kennedy was pinned or knocked against the manure truck. Therefore, in an unpublished opinion, this court reversed the circuit court's decision granting summary judgment to Kennedy, and remanded the case to the circuit court for a hearing on the merits.[3] Kennedy filed a Petition for Rehearing with this court, which was denied.

Upon remand from this court, the non-jury trial was conducted on July 15 and 17, 2008.[4] Several months later, Judge Hayes filed his order finding Kennedy was entitled to UIM coverage because he was momentarily pinned against the manure truck during the accident; therefore, he was "upon" the insured vehicle and "occupying" it according to the policy.[5] This appeal followed.

---

2. In his order, Judge Saunders stated, "There was irrefutable testimony by eyewitnesses, [Kennedy], and medical documentation that indicated [Kennedy] was momentarily pinned between the rear of the manure truck and the rear of [Counts'] truck. [Farm Bureau] presented no evidence to dispute the fact that [Kennedy] was pinned against the manure truck and therefore did not meet the scintilla of the evidence burden to make this a genuine issue of material fact."

3. *S.C. Farm Bureau Mut. Ins. Co. v. Kennedy*, Op. No. 2006–UP–423 (S.C. Ct.App. filed Dec. 19, 2006).

4. During the trial, Kennedy's counsel stated, "We have never alleged that there was any collision from the Counts truck with the manure truck.... [T]here was a collision in the Counts truck to [Kennedy's] leg and momentarily pinned him against the manure truck."

5. Judge Hayes made the following findings of fact in his order: (1) "The engine to the insured vehicle [Kennedy] was driving was running and a dog was inside"; (2) "[Kennedy], prior to the collision, rested his hand on the insured vehicle"; and (3) "The vehicle driven by George

## STANDARD OF REVIEW

Declaratory judgment actions are neither legal nor equitable; therefore, the standard of review is determined by the nature of the underlying issue. *Hardy v. Aiken*, 369 S.C. 160, 164, 631 S.E.2d 539, 541 (2006). "When the purpose of the underlying dispute is to determine whether coverage exists under an insurance policy, the action is one at law." *Auto–Owners Ins. Co. v. Hamin*, 368 S.C. 536, 540, 629 S.E.2d 683, 685 (Ct.App.2006). "In an action at law tried without a jury, the appellate court will not disturb the trial court's findings of fact unless they are found to be without evidence that reasonably supports those findings." *Id.*

## LAW/ANALYSIS

Farm Bureau argues the trial court erred in finding Kennedy was occupying the manure truck when he was hit by the pickup truck because he was not upon the manure truck at the time of the accident. We agree.

The general rules of contract construction apply to insurance policies. *MGC Mgmt. of Charleston, Inc. v. Kinghorn Ins. Agency*, 336 S.C. 542, 548, 520 S.E.2d 820, 823 (Ct.App.1999). "[T]he law is clear that, in construing an insurance contract, all of its provisions must be considered together." *Id.* "Therefore, the court must consider the entire contract between the parties to determine the meaning of its provisions, and that construction will be adopted which will give effect to the whole instrument and each of its various parts, so long as it is reasonable to do so." *Id.* "This court must enforce, not write, contracts of insurance and we must

---

Counts pushed and momentarily pinned [Kennedy] against the insured vehicle causing injury." Kennedy testified the keys were still in the ignition and his dog was in the truck. Kennedy also testified that he was leaning on the truck when he saw the pickup truck coming at him. Then, he said he took his hand off the truck and ran from the pickup truck before he was pinned to the manure truck by the pickup truck. Robinson stated in his deposition that he and Kennedy "took out running" when they saw Counts' truck headed in their direction. Robinson said he was hit first by Counts' truck, so he did not see Kennedy get hit, but he did hear Kennedy hollering in pain and saw him lying next to him on the ground. Ronald Long, who witnessed the accident, testified that for a second it appeared Kennedy was pinned between the pickup truck and the manure truck.

give policy language its plain, ordinary, and popular meaning." *Id.* at 548–49, 520 S.E.2d at 823. "An insurer's obligation under a policy of insurance is defined by the terms of the policy itself, and cannot be enlarged by judicial construction." *Id.* "[A]mbiguous or conflicting terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer." *Id.* "However, if the intention of the parties is clear, courts have no authority to torture the meaning of policy language to extend or defeat coverage that was never intended by the parties." *Id.*

Farm Bureau's policy defined "occupying" as "having actual physical contact with an auto while in, upon, entering, or alighting from it." In this case, Kennedy was not getting in or out of the manure truck at the time of the accident. He was standing near the truck when he was hit. Kennedy argues the pickup truck hit him and briefly pinned him against the manure truck. The issue now before us is whether the impact of the pickup truck pushing Kennedy into the manure truck was enough for Kennedy to have been "upon" the manure truck so as to fall under the policy. Two South Carolina cases have dealt with similar issues, but neither is the exact issue presented in this case.

In *McAbee v. Nationwide Mutual Insurance Co.*, 249 S.C. 96, 98–99, 152 S.E.2d 731, 732 (1967), our supreme court was presented with the sole question of whether the insured, while standing on the ground with his back against a parked truck in an effort to keep a tractor from rolling against him, was "upon" the truck within the meaning of the policy.[6] The court stated it did not think the meaning of the word "upon" is restricted to "on top of," such as a person resting the weight of his or her body upon the vehicle or being supported by the vehicle. *Id.* at 100, 152 S.E.2d at 732. The court noted that according to Webster's Third New International Dictionary, "[o]ne of the common and ordinary meanings of the word 'upon' is that of 'contact with'." *Id.*; see *S.C. Prop. & Cas. Guar. Ass'n v. Yensen*, 345 S.C. 512, 518 n. 2, 548 S.E.2d 880, 883 n. 2 (Ct.App.2001) (stating that *McAbee* discussed that the

---

6. The Nationwide policy insured against injury "while in or upon, entering or alighting from" the motor vehicle. *McAbee*, 249 S.C. at 98, 152 S.E.2d at 732.

term "upon" was synonymous with "contact with"). The court stated that because the policy contained no restrictions as to how or in what manner the insured was to be upon the vehicle, the court thought "it reasonable to conclude that the parties contemplated a construction of the word that would include actual physical contact with the vehicle the insured was using." *Id.* at 100, 152 S.E.2d at 732–33. Therefore, the court held the insured was in actual physical contact with the vehicle and was "upon" it within the meaning of the policy provision when he placed his back against the vehicle in an attempt to protect himself from the rolling tractor. *Id.* at 100, 152 S.E.2d at 733.

This case is distinguishable from *McAbee* because in *McAbee*, the insured had his back to the truck and was pushing against it when he was crushed to death. Therefore, the insured was physically touching the truck when he was killed. Here, Kennedy was near the manure truck when he was hit by the other vehicle and asserts he was pushed into the manure truck by the pickup truck. Therefore, Kennedy was not physically touching the truck when he was first hit by the pickup truck.

In *South Carolina Property and Casualty Guaranty Ass'n v. Yensen,* 345 S.C. 512, 518, 548 S.E.2d 880, 883 (Ct.App. 2001), this court held the owner of a disabled car, Yensen, was not "occupying" a tow truck when a car struck him as he stood alongside his disabled car. The court found Yensen was not an "insured" entitled to UIM benefits under the tow truck owner's policy, even though he intended to occupy the tow truck for a ride, because at the time of the accident he was not in, upon, getting in, on, out or off the truck, and no causal connection existed between the truck and the injuries. *Id.* at 518–20, 548 S.E.2d at 883–84. The tow truck's policy defined "insured" as "anyone else 'occupying' a covered auto." *Id.* at 517, 548 S.E.2d at 883. According to the policy, "occupying" was defined as "in, upon, getting in, on, out or off." *Id.* Therefore, this court determined Yensen was not occupying the tow truck as the policy defined that term. *Id.* at 518, 548 S.E.2d at 883. The court found that under the plain meaning of the words, Yensen was not "in, upon, getting in, on, out or off" the tow truck at the time of the accident. *Id.* at 518–19, 548 S.E.2d at 883. While the court noted there was some testimony Yensen intended to leave the scene in the tow truck,

he was not "in or on" or in the process of getting into the truck at the time of the accident. *Id.*

*Yensen* is also distinguishable from this case because in *Yensen* the court noted Yensen may or may not have intended to get into the tow truck, which was the insured vehicle from which he was seeking coverage. In this case, Kennedy had driven the manure truck to the restaurant and was intending to leave the restaurant in the manure truck; therefore, there was no question of his intent to depart in the insured vehicle. However, like Yensen, Kennedy was not "in, upon, getting in, on, out or off" the manure truck at the time of the accident. Kennedy had departed the truck, gone inside the restaurant, and then returned to the parking lot to talk to Robinson near the vehicle. Although there was testimony Kennedy was headed back to the manure truck when he was hit, he was not "getting in" the truck when he was struck by Counts' pickup truck.

In *Yensen,* this court noted that in *Whitmire v. Nationwide Mutual Insurance Co.,* 254 S.C. 184, 191–92, 174 S.E.2d 391, 394–95 (1970),[7] our supreme court "held that where a passenger was struck while within two or three feet of the car he had immediately 'alighted from,' that passenger may collect uninsured motorist coverage from the insurer of the car he had been riding in." *Yensen,* 345 S.C. at 519, 548 S.E.2d at 883–84. Yensen argued *Whitmire* was controlling because Yensen intended to occupy the tow truck and, thus, he should have been able to collect insurance from the tow truck's insurance provider. *Id.* This court found *Whitmire* was distinguishable because there, the plaintiff had unquestionably been occupying the car, whereas in *Yensen,* at most, Yensen's intent to occupy the tow truck was expressed after the accident and during litigation. *Id.* at 519, 548 S.E.2d at 884. This court stated it was reluctant to extend *Whitmire* to the facts in *Yensen* because Yensen was not "still engaged in the completion of those acts reasonably to be expected from one getting out of an automobile under similar conditions." *Id.* (quoting *Whitmire,* 254 S.C. at 191, 174 S.E.2d at 394). In *Whitmire,* the

---

7. The policy in *Whitmire* defined "occupying" as "in or upon or entering into or alighting from" the insured vehicle. *Whitmire,* 254 S.C. at 188, 174 S.E.2d at 393.

court noted "[t]he words 'in' and 'upon' encompass situations where a person has some physical contact with the vehicle at the time of injury." 254 S.C. at 191, 174 S.E.2d at 394.

Here, if Kennedy had been hit soon after he had alighted from the manure truck, under *Whitmire,* he would have been deemed to have been "occupying" the truck; however, Kennedy had gone inside the restaurant, returned to the parking lot, and was standing near the truck talking when the accident occurred. Therefore, he was not "occupying" the truck as a result of having recently alighted from the truck because of the intervening act of going into the restaurant.

While *McAbee* and *Yensen* are helpful, they are not dispositive of the issue in this case. Therefore, we look to other jurisdictions for guidance on this issue. Many states have been faced with a similar issue and some have adopted tests to determine whether a person is "occupying" a vehicle as to have coverage under an insurance policy. In *Utica Mutual Insurance Co. v. Contrisciane,* 504 Pa. 328, 473 A.2d 1005, 1009 (1984), the Pennsylvania Supreme Court established a four-part test to determine whether a person engaged in the lawful use of an insured vehicle will be considered to be "occupying" [8] that vehicle within the meaning of the policy:

(1) there is a causal relation or connection between the injury and the use of the insured vehicle;

(2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;

(3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and

(4) the person must also be engaged in a transaction essential to the use of the vehicle at the time.

*See also Loyd v. State Auto. Prop. & Cas. Co.,* 265 S.W.3d 901, 905 (Mo.Ct.App.W.D.2008) (stating the four-part test "does express reasonable and sensible considerations to determine whether a person is occupying a vehicle," but declining to adopt the test); *Cuevas v. State Farm Mut. Auto. Ins. Co.,* 130 N.M. 539, 541, 28 P.3d 527 (N.M.Ct.App.2001) (citing the

8. The *Utica* policy provided, " 'occupying' means in or upon or entering into or alighting from." *Utica,* 473 A.2d at 1008.

*Utica* test, and noting it has been adopted in the majority of jurisdictions and "is broader and is concerned with whether 'the person claiming benefits was performing an act (or acts) which is (are) normally associated with the immediate "use" of the [vehicle]' " (quoting *Utica*, 473 A.2d at 1009)); *Downing v. Harleysville Ins. Co.*, 412 Pa.Super. 15, 602 A.2d 871, 874 (1992) (applying the *Utica* test); *General Accident Ins. Co. of Am. v. Olivier*, 574 A.2d 1240, 1241 (R.I.1990) (finding the Utica test persuasive); *Roden v. Gen. Cas. Co. of Wisc.*, 671 N.W.2d 622, 627–28 (S.D.2003) (noting a majority of the jurisdictions have adopted the four-part test established in *Utica* and finding "the four-part test set forth above should be utilized in this jurisdiction when determining whether or not an individual is 'occupying' the insured vehicle under the policy definitions").

In *Moherek v. Tucker*, 69 Wis.2d 41, 230 N.W.2d 148, 151–52 (1975), the Supreme Court of Wisconsin adopted a different test to determine whether an injured party was "occupying" the vehicle.[9]   The test considered whether the party was vehicle-oriented or highway-oriented at the time of the injury. *Id.; Kreuser by Kreuser v. Heritage Mut. Ins. Co.*, 158 Wis.2d 166, 461 N.W.2d 806, 808 (Wis.Ct.App.1990) ("In *Moherek*, the supreme court established a test to determine whether or not an injured party was 'occupying' the vehicle.  The test considers whether the party was vehicle-oriented or highway-oriented at the time of the injury."). "[A] person has not ceased 'occupying' a vehicle until he has severed his connection with it—i.e., when he is on his own without any reference to it.  If he is still vehicle-oriented, as opposed to highway-oriented, he continues to 'occupy' the vehicle." *Moherek*, 230 N.W.2d at 151 (quoting *Allstate Ins. Co. v. Flaumenbaum*, 62 Misc.2d 32, 308 N.Y.S.2d 447, 462 (N.Y.Sup.Ct.1970)).  In *Kreuser*, the court of appeals noted the "vehicle-orientation" test considers the nature of the act engaged in at the time of the injury and the intent of the person injured, and added a third consideration: whether the injured person was within the reasonable geographical perimeter of the vehicle.  461 N.W.2d at 808.

---

9.  The policy in *Moherek* defined "occupying" as "in or upon, entering into or alighting from" the insured vehicle.  *Moherek*, 230 N.W.2d at 149.

In *Wickham v. Equity Fire and Casualty Co.*, 889 P.2d 1258, 1261 (Okl.Ct.App.1994), the Oklahoma Court of Appeals discussed the *Kreuser* and *Utica* tests and declined to adopt a bright-line test. Instead, the court held that "the determination of whether the policy definition of 'occupying' is satisfied should be left to a case-by-case analysis, depending on the circumstances of the accident, the use of the vehicle, the relevant terms of the coverage at issue, and any underlying public policy considerations." *Id.* Therefore, the court found a man who was struck by another car while fixing the tire on a car was "occupying" the vehicle.[10] *Id.*

Similarly, in *United Farm Bureau Mutual Insurance Co. v. Pierce*, 152 Ind.App. 387, 283 N.E.2d 788, 791 (1972), the Indiana Court of Appeals determined that Pierce was "upon" his vehicle when he cut his hand on the fender of his car because he was pushing on the front fender in an attempt to push it out of the snow.[11] The court noted "[t]he majority of 'in or upon' cases appear to rely primarily upon physical support." *Id.* at 790. Almost ten years later, in *Michigan Mutual Insurance Co. v. Combs*, 446 N.E.2d 1001, 1007 (Ind. Ct.App.1983), the court of appeals held the claimant, who was working on the insured vehicle's engine and resting his knees on the bumper, was "upon" the insured vehicle when he was hit by another vehicle.[12] The court noted the application of the "physical contact" rule relied upon in *Pierce* could unduly restrict coverage in some factual settings and serve to expand coverage beyond the contemplation of the contracting parties in other settings. *Id.* at 1005. The court also noted that in *Robson v. Lightning Rod Mutual Insurance Co.*, 59 Ohio App.2d 261, 393 N.E.2d 1053, 1055 (1978), the Ohio Court of Appeals held in cases in which a gray area existed concerning whether a person was "in or upon, entering into or alighting

---

10. The Equity policy defined "occupying" as "in, on, getting in or on, or getting off or out of" the insured vehicle. *Wickham,* 889 P.2d at 1260.

11. The policy defined "occupying" as being "in or upon, entering into or alighting from" the vehicle. *Pierce,* 283 N.E.2d at 789.

12. According to the policy, "occupying" means "in or upon or entering into or alighting from" the insured vehicle. *Combs,* 446 N.E.2d at 1007.

from" an insured vehicle, the determination of whether the vehicle was "occupied" should be based on an analysis of the relationship between the vehicle and the claimant within a reasonable geographic perimeter. The *Robson* court also rejected the physical contact rule. *Id.* However, in *Combs,* the court found that both the physical contact rule and the *Robson* claimant-vehicle relationship analysis supported coverage for the claimant because he was in physical contact with the car and his actions evidenced a relationship with the vehicle and its operation. *Combs,* 446 N.E.2d at 1007.

Other courts have declined to find coverage when, as in this case, the injured person was not touching the insured vehicle at the time of the accident. In *Rednour v. Hastings Mutual Insurance Co.,* 468 Mich. 241, 661 N.W.2d 562, 567 (2003), Rednour argued he was "upon" a car when he was pinned against it after being struck by another car. Rednour admitted he was not touching his friend's car and was approximately six inches from the car when the other vehicle struck him. *Id.* at 563. The Michigan court noted that "physical contact by itself does not, however, establish that a person is 'upon' a vehicle such that the person is 'occupying' the vehicle." *Id.* at 567. The court held that under the policy's definition of "occupying," Rednour was not occupying the insured automobile when he was injured.[13] *Id.* at 568.

In *State Farm Mutual Automobile Insurance Co. v. Farmers Insurance Co.,* 569 S.W.2d 384, 384–85 (Mo.Ct.App.1978), the insured was beside his friend's car, walking towards the car door when another car rear-ended the car. At the time of the impact, the insured was completely outside the car and was not touching any part of the car; however, the force of the impact moved the car and caused it to collide with the insured. *Id.* The court stated it found no cases in which the claimant's reason for being outside the automobile was unrelated to the operation of the vehicle itself that held the "upon" requirement was met when the claimant was not in contact with the vehicle immediately prior to the accident. *Id.* at 385–86. Therefore, the court determined the insured was not

---

**13.** The policy defined "occupying" as "in, upon, getting in, on, out or off." *Rednour,* 661 N.W.2d at 564.

"occupying" the vehicle at the time of the accident and was not covered by the insurance policy. *Id.*

In *Kelleher v. American Mutual Insurance Co. of Boston,* 32 Mass.App.Ct. 501, 590 N.E.2d 1178, 1180 (1992), Kelleher argued he was "occupying" the insured vehicle when he was struck by another car because he was "upon" the vehicle he had just exited. The court noted:

[I]n determining whether a claimant is "upon" an insured vehicle, courts have invariably required some physical contact with the vehicle, or at a minimum, the performance of an act directly related to the vehicle, such as the changing of a tire. Such a requirement is consistent with the commonly understood definition of "upon", that of "on."

*Id.* The court then determined:

[N]o facts indicate[d] that Kelleher was either "in," "upon," "entering into" or "alighting from" the insured motor vehicle at the time he was struck; instead, the uncontroverted facts demonstrate that the operation of the Larson vehicle had come to an end, Kelleher had completed the act of leaving the vehicle, and he was approximately four feet away from it when the accident occurred.

*Id.* at 1181. Therefore, the court found "Kelleher had completely severed his relationship with the vehicle" and did not qualify as an insured under the policy. *Id.* at 1180–81.

In *Miller v. Mabe,* 947 S.W.2d 151, 154 (Tenn.Ct.App.1997), the Tennessee court found that, at the time of the accident, Miller was neither getting into the van nor getting out of it, and although he was utilizing the lights from the van, he was not using the van itself at the time of the accident. Therefore, the court determined there was no "causal relation" between Miller's use of the van and his being struck by Mabe's vehicle. *Id.* Miller was standing in the middle of the road three or four feet from his van, closer than the decedent in another case, but far enough away that he could not be considered "upon" the vehicle. *Id.* Miller's attention was focused on using the limb to work the cable wire through the tree branches and was not focused on his van; therefore, the activity was not "essential" to the use of the van. *Id.* Consequently, under the criteria established in *Utica,* Miller was not "occupying" his work van at the time of his accident, and

therefore, was not covered under the uninsured motorist provision of his employer's policy. *Id.*

In reaching our decision in this case, we need not adopt a bright-line test, as adopted by some foreign jurisdictions, because we can rely on the South Carolina cases of *Yensen* and *McAbee.* Therefore, based on *Yensen* and *McAbee,* we conclude the trial court in this case erred in finding Kennedy was "upon" the manure truck when he was hit by the pickup truck and momentarily pinned to the manure truck because he was not "in, upon, getting in, on, out or off" the manure truck at the time of the accident. He had departed the truck, gone inside the restaurant, and returned to the parking lot to talk to his half-brother near the vehicle when he was hit by the pickup truck. As a result, there was no causal connection between Kennedy's use of the manure truck and his being struck by Counts' pickup truck. Hence, Kennedy was not occupying his employer's truck at the time of the accident, and is not entitled to UIM coverage from his employer's policy.

## CONCLUSION

Accordingly, the trial court's order is

**REVERSED.**

WILLIAMS and LOCKEMY, JJ., concur.